COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Willis and Overton
Argued at Alexandria, Virginia


JOHN P. SOLOMOND
                                        OPINION BY
v.      Record No. 0953-95-4      JUDGE SAM W. COLEMAN III
                                        MAY 7, 1996
C. LOUISE BALL


        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                Paul F. Sheridan, Judge Designate


        John P. Solomond, <u>pro</u> <u>se</u>.

        C. Louise Ball, <u>pro</u> <u>se</u>.


     This domestic relations appeal involves the obligation of a
noncustodial parent to pay an amount of child support in excess
of the amount provided by the presumptive guidelines under Code
§ 20-108.2.  The trial court ordered the increase in the
noncustodial parent's child support, which deviated from the
guidelines, to enable the parents' two children to transfer from
one private school to a more expensive private school of the
custodial parent's choice.  We hold that the trial court erred by
increasing the noncustodial parent's monthly support obligation
because no showing was made on the record of an adequate reason
to further deviate from the presumptive amount of support.

     In addition, the father appeals the trial court's holding
that he was $100 in arrears for his January 1995 support payment.
 We affirm that holding.

John Paul Solomond and C. Louise Ball were divorced in 1988. The divorce decree granted Ball custody of their two sons, Phillip McCown Solomond and Matthew Brady Solomond. In 1994, Ball filed a motion to increase child support because Phillip and Matthew had been accepted at Corpus Christi School, a private Catholic school. Prior to the fall of 1994, both children had attended public school, where they had performed well academically.

As a result of the 1994 modification hearing, the trial court held that Phillip's and Matthew's acceptances to attend Corpus Christi were material changes in circumstances that justified modifying the existing child support order. The court determined that the presumptive amount of child support that Solomond was expected to pay according to the guidelines was $1,171 per month, based upon Solomond's actual monthly income and Ball's actual and imputed income of $1,952 per month. However, because the children incurred substantial additional educational expenses by attending Corpus Christi, and because Ball's actual annual income was only $18,000, the trial court held that the presumptive guideline amount would be "unjust and inappropriate." Specifically, the court stated that it was deviating from the guidelines because it would be in the children's "best interests to take advantage of th[e] educational opportunity" offered by attending Corpus Christi. Consequently, the court ordered that

Solomond "should pay 70% of all school-related costs, including but not limited to expenses of tuition, uniforms, books, transportation, supplies, registration and testing fees, and field trips as such expenses and costs are due." In addition, the court held that "if the children succeed in gaining entrance to another school whose tuition is higher, this would constitute a sufficient change in circumstances to re-evaluate the percentage each parent would be required to contribute." Solomond objected to the court's 1994 modification order, but he did not appeal from it.

In March 1995, Ball filed a motion to increase child support by adjusting the percentage of tuition that Solomond would be required to pay because Phillip had been accepted to St. Stephen's, another private school, for the 1995-96 school year and Matthew had been placed on the school's waiting list.[1] Because the tuition at St. Stephen's is "considerably higher" than the tuition at Corpus Christi, Ball petitioned the court to increase the percentage of the children's educational expenses to be paid by Solomond.

Solomond responded by requesting that the trial court vacate the August 1994 modified child support order that required him to pay seventy percent of the children's educational expenses, and he also requested that the court enter an order limiting his child support obligation to the presumptive amount under the

---

[1] Matthew was subsequently admitted to St. Stephen's.

guidelines.  Solomond argued that the evidence did not show that it was necessary or justified for the children to attend private school, much less to transfer from Corpus Christi to St. Stephen's.  Furthermore, he asserted that his income and financial resources were inadequate to send the children to private school, particularly to pay the increased expenses to attend St. Stephen's.

The trial court held that Phillip's admission to St. Stephen's and Matthew's placement on the waiting list constituted a material change in circumstances, and that it would be in the "best interests" of the children "to take advantage of this educational opportunity."  Accordingly, the court modified the child support order to require Solomond to pay, in addition to the presumptive amount provided by the guidelines, the children's yearly educational expenses in the amount of seventy percent of the first $8,000 in expenses and fifty percent of expenses exceeding $8,000.

PRIVATE SCHOOL EXPENSES

Solomond asked the trial court to vacate its 1994 support order, which deviated from the guidelines and ordered him to pay a percentage of all private school expenses.  A trial court may modify or vacate a final order within "twenty-one days after the date of entry, and no longer."  Rule 1:1.  Here, because the twenty-one day period had elapsed, the trial court had no authority to vacate the August 1994 order requiring Solomond to

- 4 -

pay seventy percent of Phillip's and Matthew's private school expenses. Because Solomond did not appeal the August 1994 order and because it now constitutes a final decree, the findings of fact and conclusions of law contained in that decree are binding and become the law of the case insofar as the 1994 support award is concerned. See Hall v. Hall, 9 Va. App. 426, 429, 388 S.E.2d 669, 670 (1990). Therefore, we cannot disturb the trial court's finding that it was in Phillip's and Matthew's "best interest" to leave the public school system to attend private school, although the record does not show a special need for either of them to attend private school. Furthermore, we cannot disturb the trial court's holding that the changed circumstance justified deviating from the guidelines to require the father to pay an additional sum for the children's private schooling. As the following discussion demonstrates, however, we are not bound by the anticipatory language in the August 1994 order that the children's admission to another school would constitute a material change in circumstance that would justify a reevaluation of the father's support obligation.

In Smith v. Smith, 18 Va. App. 427, 444 S.E.2d 269 (1994), we held that "[i]mplicit in the [child support] statutory scheme is that educational expenses are included in the presumptive amount of child support as calculated under the Code." Id. at 435, 444 S.E.2d at 275. Code § 20-108.1(B) expressly provides that when a trial court deviates from the presumptive amount

recommended by the guidelines, it must provide written findings of fact that "shall give a justification of why the order varies from the guidelines." Id. Furthermore, "a conclusory written statement of [the trial court's] findings" is not sufficient to justify deviating from the presumptive guideline amount. Richardson v. Richardson, 12 Va. App. 18, 22, 401 S.E.2d 894, 896 (1991).

In determining whether a noncustodial parent should be required to pay support to provide for a child's private educational expenses, other jurisdictions have held that two conditions must exist: "demonstrated need of the child, and the parent's ability to pay." See In re Marriage of Stern, 789 P.2d 807, 813 (Wash. Ct. App.), review denied, 797 P.2d 513 (Wash. 1990). These courts have considered factors such as the availability of satisfactory public schools, the child's attendance at private school prior to the separation and divorce, the child's special emotional or physical needs, religious training, and family tradition. See, e.g., In re Marriage of Aylesworth, 165 Cal. Rptr. 389, 394 (Cal. Ct. App. 1980); In re Marriage of Eaton, 894 P.2d 56, 59-60 (Colo. Ct. App. 1995); Cleveland v. Cleveland, 289 A.2d 909, 913 (Conn. 1971); Rucks v. Nugent, 594 N.Y.S.2d 379, 381 (N.Y. App. Div. 1993); Evans v. Craddock, 300 S.E.2d 908, 911-12 (N.C. Ct. App. 1983); Hurley v. Hurley, 610 A.2d 80, 87 (R.I. 1992); In re Marriage of Stern, 789 P.2d at 814. We find these factors relevant not only for

determining whether a demonstrated need has been shown for the child to attend private rather than public school, but also for determining whether there is justification for requiring a parent to pay for a child to transfer to a more expensive private school. When a parent proposes to have a child transfer to another private school and that change will have a significant effect on the parents' support obligations, the trial court must consider, together with each parent's ability to pay, whether a reason or need is shown to justify a change of schools before increasing a noncustodial parent's support obligation.

Here, the trial court's only stated reason for increasing the amount of the father's child support obligation was the conclusion "that it would be in [Phillip's and Matthew's] best interest to be able to take advantage of this opportunity." The court made no written findings of fact, as required by Code § 20-108.1, that justified further deviation from the guidelines to require Solomond to pay an additional amount of child support. Id. (providing that the court "shall give a justification of why the order varies from the guidelines"). Although Ball attended St. Stephen's and testified that it is "the preferred institution," the record does not demonstrate a need of either child that was not being adequately met at Corpus Christi, and that would be served by transferring to St. Stephen's. The only fact the record establishes is that the tuition at St. Stephen's is "considerably higher" than that at Corpus Christi.

- 7 -

Accordingly, the record does not support the trial court's finding and provides no "justification" for the holding that it would be in the best interests of Phillip or Matthew to transfer from Corpus Christi to St. Stephen's. Thus, we reverse the modification order and remand the support issue for the court to reinstate a support order at the amount previously established by the August 1994 order.

"Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur." Keyser v. Keyser, 2 Va. App. 459, 461, 345 S.E.2d 12, 13 (1986). A trial court may not abrogate its responsibility to determine that a material change of circumstance justifies a modification of child support by entering an order that results in an automatic increase in the support obligation upon the occurrence of future events. See Jacobs v. Jacobs, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979). Here, the trial court set Solomond's support obligation as a percentage of his children's educational expenses rather than at a specific monetary amount. Thus, under the trial court's formula, which is not in accordance with the holding in Jacobs, Solomond's support obligation automatically increases or decreases depending upon the changes in the children's actual expenses. "The statutory scheme provided by the General Assembly does not contemplate automatic changes or escalator clauses." Keyser, 2 Va. App. at 461-62, 345 S.E.2d at 14. On remand, the

trial court is directed to enter an order requiring Solomond to pay the presumptive guideline amount and an additional amount that is equivalent to seventy percent of the expenses for the year that Phillip and Matthew began attending Corpus Christi.

JANUARY 1995 SUPPORT PAYMENT

Several days after Solomond sent Ball a check for the October 1994 child support payment, he notified her that the funds in his account were insufficient to honor the check and that her bank would probably debit her account accordingly. When Ball's bank thereafter notified her that her account would be debited, she obtained funds from another source to avert the deficiency. She did not incur a penalty with her bank as a result of Solomond's defalcation. Thereafter, Solomond gave Ball a second check for the amount due for the October support payment plus an additional $100 to reimburse her for any "fees or aggravation" that she had indicated she might incur. When Solomond later learned that Ball had not incurred any expenses as a consequence of his dishonored check, he deducted $100 from his January 1995 child support payment. The trial court found that Solomond was in arrears in the amount of $100 for failing to pay the court ordered amount of support for January 1995.

Solomond may have grounds to recover the $100 in a separate civil action because it appears that Ball accepted the money even though she knew that she would not incur any expenses as a result of the dishonored check Solomond tendered. Accepting Solomond's contention, for purposes of this opinion, that he is legally entitled to recoup the $100 he paid Ball on the mistaken belief that she had incurred expenses, he was not entitled to unilaterally deduct that amount from his monthly payment in

disregard of his court ordered support obligation.  See <u>Newton v. Newton</u>, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961).  Because Solomond's January 1995 support payment did not conform to the amount of child support that he was ordered to pay, we affirm the trial court's finding that Solomond owes $100 in child support arrearages for January 1995.  <u>See</u> <u>Sanford v. Sanford</u>, 19 Va. App. 241, 243, 450 S.E.2d 185, 187 (1994) (holding that because the husband was required to pay spousal support in accordance with the terms of the support decree, "he was not entitled to credit the amount he paid in excess of his court-ordered monthly support against his future support obligations").

In summary, we affirm the trial court's order finding that Solomond owes $100 in child support arrearages for January 1995.  We reverse the court's order finding that the children's transfer to St. Stephen's was a change in circumstance that justified a further deviation from the presumptive support guidelines.  Accordingly, we remand the case to the trial court with instructions to enter a support order consistent with the foregoing holding and directions.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>