COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia


MEREDITH ALEXANDER CHALLONER

v.          Record No. 1847-96-1

CYNTHIA PRESSON CHALLONER                 MEMORANDUM OPINION[*] BY
                                          JUDGE JERE M. H. WILLIS, JR.
MEREDITH ALEXANDER CHALLONER                   APRIL 1, 1997

v.          Record No. 2294-96-1

CYNTHIA PRESSON CHALLONER


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                     Verbena M. Askew, Judge

            Player B. Michelsen (Donald K. Butler;
            Morano, Colan & Butler, on briefs), for
            appellant.

            John F. Rixey (Rixey and Rixey, on brief),
            for appellee.


     Meredith A. Challoner appeals from a final decree granting

his wife, Cynthia P. Challoner, a divorce, and from an order

denying his petition for modification of support.  Mr. Challoner

contends that the trial court erred (1) in classifying certain

stock as marital property, (2) in fashioning the equitable

distribution award, (3) in determining spousal and child support,

(4) in denying his petition for modification of support, and (5)

in awarding Ms. Challoner attorney's fees.  Because the trial

court erred in classification of the parties' property, we

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

reverse on all issues and remand to the trial court.

Mr. Challoner contends that the trial court erred in finding that stock in Hampton Roads Chemical Corporation (HRCC), a family-owned business, was transmuted from separate property to marital property. The parties were married December 16, 1972. In 1972, prior to the marriage of the parties, Mr. Challoner received five shares of HRCC from his father. In 1974, Mr. Challoner began working for HRCC. Thereafter, he received stock in HRCC as follows: thirty-nine shares in 1984; ten shares in 1987; eleven shares in 1988; and eleven shares in 1989. Mr. Challoner argues that the stock was a gift, and, therefore, his separate property.

The trial court erred in classifying the five premarital shares as marital property, determining that this separate property had been transmuted into marital property. Plainly, the five shares of stock acquired by Mr. Challoner prior to his marriage were separate property. See Code § 20-107.3(A)(1). Despite the significant nonmonetary contributions made by Ms. Challoner to the marital relationship, the statutory framework of Code § 20-107.3 prevents the transmutation of the stock into marital property.

Prior to equitable distribution, a trial court must classify the parties' property as marital, separate, or part marital and part separate. See Code § 20-107.3(A). The so-called "hybrid," or part marital and part separate, property classification

permits the retention of separate property by the acquiring spouse, while simultaneously affording the marital partner the increase in value attributed to the separate property during the course of the marital relationship. See Code § 20-107.3(A)(3).

However, the non-owning spouse must prove that the separate property increased in value due to contributions of marital property or the personal efforts of either party. Id. While the trial court found that Mr. Challoner's personal efforts led to a significant increase in the value of the HRCC stock, no evidence was presented regarding the premarital value of the stock shares acquired by Mr. Challoner. Therefore, we cannot determine the amount, if any, of the value of the shares that constitutes marital property.

We have previously held that: "prior to the 1990 amendment to Code § 20-107.3 . . . if the non-owning spouse nevertheless makes significant monetary or nonmonetary contributions to the marital relationship, that contribution is sufficient to transmute what was separate business property into marital property where the owning spouse devotes his efforts throughout the marriage to working in the business." Barnes v. Barnes, 16 Va. App. 98, 104-05, 428 S.E.2d 294, 299 (1993) (emphasis added). See Lambert v. Lambert, 6 Va. App. 94, 367 S.E.2d 184 (1988). Citing Barnes, the trial court found that Ms. Challoner:

> Made significant non-monetary contributions
> to the marital relationship which allowed
> [Mr. Challoner] to spend an enormous amount
> of time developing and enhancing the

business.  Based on the evidence, the Court finds that HRCC was transmuted to marital property.

The 1990 amendment to Code § 20-107.3 limits the potential transmutation of separate property to marital property to include:  (1) retention of the classification of the receiving property when separate and marital property commingle, with a resulting loss of identity of the contributed property; (2) acquisition of new property through the commingling of marital and separate property resulting in the loss of identity of the contributed properties; and (3) retitling separate property in the joint names of the parties.  See Code § 20-107.3(A)(3)(d-f).  In this case, the shares of stock owned by Mr. Challoner prior to his marriage were not retitled in the parties' joint names, commingled with marital property to acquire new property, or commingled with marital property in such a manner as to lose its separate identity.  Therefore, the five shares of stock in HRCC owned prior to marriage were not transmuted and remain Mr. Challoner's separate property.

As for classification of the remaining shares, all property acquired by either spouse during the marriage "is presumed to be marital property in the absence of satisfactory evidence that it is separate property."  Code § 20-107.3(A)(2); Bowers v. Bowers, 4 Va. App. 610, 615, 359 S.E.2d 546, 549 (1987).  Thus, if the donee presents "sufficient evidence," and the other party presents no evidence to the contrary, the statutory presumption

- 4 -

of marital property is rebutted.  See Huger v. Huger, 16 Va. App. 785, 788, 433 S.E.2d 255, 257 (1993).

In this case, Mr. Challoner failed to rebut the statutory presumption.  While he testified that the shares were gifts, the commissioner found, and the trial court accepted, that the shares received during marriage were marital property.  The commissioner noted that:  "While a gift by definition is normally transferred 'without consideration,' the stock interests conveyed to the husband were not in reality 'gifts,' but were in return for the services he rendered" to HRCC.  See Brett R. Turner, Equitable Distribution of Property, § 5.16 (2d ed. 1994).

Because the parties' assets were improperly classified, the trial court must reconsider its equitable distribution, child support, and spousal support awards.  While we recognize that our reversal abrogates the trial court's award of attorney's fees to Ms. Challoner for the hearing on Mr. Challoner's petition to modify his support obligations, we note that the decision to grant attorney's fees lies in the trial court's sound discretion with the key being reasonableness under all of the circumstances. Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987); McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

In addition, we recognize that the trial court may be called upon to reconsider whether to deviate from the child support guidelines to accommodate the tuition costs for the parties'

children's attendance at private schools. While not addressing this issue specifically on appeal, we suggest the following as guidance to assist the trial court in resolving this matter.

"Implicit in the [child support] statutory scheme is that educational expenses are included in the presumptive amount of child support as calculated under the Code." Smith v. Smith, 18 Va. App. 427, 435, 444 S.E.2d 269, 275 (1994). See Code § 20-108.1(B)(6). "Code § 20-108.1(B) expressly provides that when a trial court deviates from the presumptive amount recommended by the guidelines, it must provide written findings of fact that 'shall give a justification of why the order varies from the guidelines.'" Solomond v. Ball, 22 Va. App. 385, 391, 470 S.E.2d 157, 159-60 (1996) (citation omitted).

In the final decree of divorce, the trial court deviated from the child support guidelines to include the private school expenses of the parties' children. In justifying the increase in support, the trial court opined that:

> [T]he presumptive amount of child support . . . would be unjust and inappropriate in this case based upon the standard of living of the family established during the marriage, the particular problems of one or more of the children, the indicated desires of both parties to continue with the private education of the children, and the earning capacity, obligations, needs and financial resources of both parties . . . .

In Ball, the trial court failed to consider whether the father was required to pay for his children's transfer from one

- 6 -

private school to a more "preferred," and, expensive, private school.  In reversing that judgment, we noted that "the trial court must consider, together with each parent's ability to pay, whether a reason or need is shown to justify a change of schools before increasing a noncustodial parent's support obligation." Ball, 22 Va. App. at 392, 470 S.E.2d at 160.  In determining whether requiring a parent to pay for a child to transfer to a more expensive school is justified, relevant factors include: the availability of satisfactory public schools, attendance at private school prior to the separation and divorce, special emotional or physical needs, religious training and family tradition.  Id. at 391–92, 470 S.E.2d at 160.

In this case, the trial court grounded its decision to deviate upward from the child support guidelines upon the parties' standard of living, earning capacity and the "particular problems of one or more children."  See Code § 20–108.1(B)(6), (10) and (11).  Prior to the separation, the parties' children attended private school, with tuition costs estimated at $11,050 in 1993.  However, since the parties' separation, one child moved to a different private school, and the eldest child went to boarding school.  The evidence showed that tuition expenses totaled $23,790.  The trial court modified the presumptive monthly child support obligation from $2,487 to $3,787 per month, which included health care coverage.

In deviating from the presumptive child support guidelines,

the trial court should consider what specific circumstances justified requiring Mr. Challoner to pay for significantly increased tuition costs resulting from the transfer of the parties' children to different, and more expensive, private schools.

For the foregoing reasons, we reverse and remand to the trial court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>