COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Overton
Argued at Salem, Virginia


JOHN T. WHEATON
                                  MEMORANDUM OPINION[*] BY
v.         Record No. 1323-96-3   CHIEF JUDGE NORMAN K. MOON
                                         APRIL 15, 1997
VICKI W. WHEATON


             FROM THE CIRCUIT COURT OF NELSON COUNTY
                   J. Samuel Johnston, Jr., Judge

          Richard L. Locke (Dana J. Finberg; Mezzullo &
          McCandlish, on briefs), for appellant.

          Ronald R. Tweel; William C. Scott, IV
          (Michie, Hamlett, Lowry, Rasmunseen & Tweel,
          P.C., on brief), for appellee.


     John T. Wheaton ("husband") appeals the decision of the

trial court deciding matters of spousal and child support.

Husband contends the trial court erred in: (1) replacing

husband's periodic support obligation with a lump sum spousal

support obligation; (2) awarding a lump sum spousal support award

of $84,000 after having determined that husband's gross annual

income was $23,000; (3) increasing child support to an award

three times greater than the presumptive award amount as

determined under Code § 20-108.2 after having determined that

husband's annual income in September, 1995 had fallen from

$235,000 to $23,000; (4) requiring husband to pay a portion of

his children's private school tuition despite husband's request

────────────────────
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

that his children not attend private school; (5) refusing to impute income to Vicki W. Wheaton ("wife"); and (6) adding language to its final order stating that the $100,000 lump support obligation outlined in the parties' separation agreement was "vested" and "accrued."

We hold that: (1) husband failed to object to the trial court's award of a lump sum payment and, therefore, Rule 5A:18 bars consideration of this issue; (2) the trial court's award of $84,000 in spousal support was supported by evidence of husband's earning capacity and the earning potential of his stock assets; (3) the record contained evidence sufficient to support the trial court's award of child support payments three times greater than the presumptive amount, however, the trial court erred in not making written findings supporting its deviation from the presumptive amount; (4) the evidence was sufficient to support the trial court's order that husband pay support in order that his children remain in private school, however as such payment constituted an upward deviation in support, the court erred in failing to provide written findings supporting such deviation; (5) the trial court did not abuse its discretion in refusing to impute income to wife because the evidence presented by husband was insufficient to enable the trial court to reasonably project wife's income; and (6) the trial court erred in adding language to its order indicating that the lump sum award provided by the parties' separation agreement was "vested" and "accrued."

Husband and wife were married on July 22, 1977. The parties

- 2 -

had two children before their separation in April, 1989.  The parties entered into a separation agreement on March 17, 1992, and were divorced on March 31, 1992.  The final decree of divorce adopted and incorporated the parties' separation agreement which provided that between 1992 and 1994 husband was to pay wife a total of $267,000.  Husband was also required to pay wife $2,800 in monthly spousal support and $2,000 in monthly child support.  Section 9(b) of the separation agreement provided that husband was to make a final lump sum support payment to wife in 2003 of $100,000.

At the time of the parties' divorce in 1992, wife, a licensed nurse, was not employed and had not worked since 1987.  Husband's income at the time of divorce was $185,000, derived from dividends he received from Wheaton, Inc., a family held corporation, of which husband owned 178,000 shares of stock.[1]  In August, 1995, Wheaton announced it would reduce dividends by fifty percent because of significant deterioration in Wheaton, Inc.'s financial position.  Wheaton also reduced director salaries to $22,500.

Husband determined that the reduction in his dividends and salary would leave him with an annual income of $23,000.  On September 12, 1995, husband petitioned the trial court to modify

---

[1] In 1994, husband's income was $215,000, reflecting an increase in Wheaton dividends.  In June, 1995, husband reported expecting an income of $235,000 for 1995, reflecting payment of a $25,000 salary to husband for serving as a member of Wheaton's board of directors.

his spousal and child support obligations in light of his changed circumstances. During the hearings on husband's motion to modify, husband presented evidence of his reduced dividend income and salary reduction. Husband also introduced testimony from Gail Austin, a health care placement professional, who testified that wife could work in the Charlottesville metropolitan area as a licensed professional nurse, a position for which wife was credentialed, earning between $26,000 and $37,900.

The trial court granted husband's motion to reduce spousal and child support and determined that husband's income was $23,000 and that husband should not seek other employment because of the nature of his current employment. The court found that pursuant to Code § 20-108.2 child support should be $912 from June 1, 1995 through and including September 30, 1995, when husband's stock dividends ceased entirely. The court found that from October 1, 1995, the presumptively correct amount of child support was $314.38. Having made these determinations, the trial court, without written explanation, deviated upward from the guidelines, ordering child support in the amount of $1,000 from October 1, 1995.

The trial court also ordered that husband pay the following expenses: (1) one-half of the private school tuition of the parties' minor children for the second semester of the school year which began in the fall of 1995, totalling $3,000; (2) wife's attorney's fees in the amount of $15,000; (3) a lump sum spousal support payment of $84,000; and (4) child support of $912

per month from June 1, 1995 through September, 1995.

Periodic/Lump Sum Award

In granting husband's spousal and child support modification petition, the trial court eliminated husband's obligation to pay $2,800 in monthly spousal support and instead ordered husband to make an $84,000 lump sum support payment to wife.  Husband's argument that the trial court "exceeded its authority" by converting the periodic support award to a lump sum award is raised for the first time on appeal.  Further, husband's counsel specifically invited the trial court to make a lump sum award, arguing that husband "would like the Court to do a lump sum award so that -- and with no reservations of spousal support, so he's through with that issue.  And I think the statute allows that. You can clearly do a lump sum award."  (Emphasis added).  Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for appeal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."  McQuinn v. Commonwealth, 20 Va. App. 753, 755, 460 S.E.2d 624, 626 (1995) (en banc).  Having failed to properly raise the issue at trial, and in fact, having invited the error now alleged, Rule 5A:18 bars husband from raising this argument now except for good cause shown or to meet the ends of justice. Because the record does not show any obvious miscarriage of justice, neither the ends of justice nor good cause permit waiver

of the Rule 5A:18 bar.  <u>Commonwealth v. Mounce</u>, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987).


<u>Amount of Lump Sum Award</u>

While a trial court may not order spousal support that exceeds the capacity of the payor spouse to pay, <u>Payne v. Payne</u>, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987), the court must consider all of the factors in Code § 20-107.1 including "the property interests of the parties."  The husband's property interests in this case are sufficiently significant to outweigh other factors such as his current level of income.

Here, ample evidence was introduced to support the trial court's finding that husband could make the $84,000 lump sum support payment.  At the time of the hearing, husband possessed 178,000 shares of Wheaton, Inc. stock.  Husband represented to the court that the value of these shares was approximately five dollars a share, totaling roughly $893,370, and that the shares were not a liquid asset.  However, on cross-examination husband stated that his shares had been valued at $41.50 a share in December, 1991.  Further, husband's expert witness testified that the value of the stock in December, 1991, based on the evidence before the trial court, was between $31 and $25 per share, totalling $4,450,000 at the $25 per share value.[2]  This evidence

---

[2] Within one month of the trial court's final order, husband sold his Wheaton, Inc. shares for $63 a share, grossing $11,256,462.

of husband's assets was sufficient to support the trial court's finding that husband could pay wife a lump sum support payment of $84,000.

### Child Support

As is the case with determining spousal support, in determining child support, the trial court must consider each parent's "[e]arning capacity, obligations and needs, and financial resources."  Code § 20-108.1(B)(11).  Here, the evidence of husband's stock assets, discussed above, was sufficient to sustain the trial court's award of child support in an amount three times greater than the presumptive amount.

However, Code § 20-108.1(B) expressly provides that when a trial court deviates from the presumptive amount "it must provide written findings of fact that `shall give a justification of why the order varies from the guidelines.'"  Solomond v. Ball, 22 Va. App. 385, 391, 470 S.E.2d 157, 160 (1996) (citations omitted). Here, the trial court offered no written explanation for its deviation.  Accordingly we remand for redetermination of child support, with any deviation to be accompanied by the statutorily required written findings.

On June 3, 1996, wife petitioned us to allow the trial court to reconsider the child support award while this case was on appeal.  We declined to do so; however, when this matter returns to the trial court, the child support amount should be reconsidered and if deviation from the guidelines is justified,

then the reasons therefor should be stated in writing for the period from the date of the judgment appealed from to June 3, 1996, the date the said petition was filed in this Court. A new hearing shall be conducted on the amount concerning child support retroactive to June 3, 1996.

### Payment of Private School Tuition

In Solomond, we delineated factors to be considered by a trial court in determining whether a noncustodial parent should be required to pay support to provide for a child's private educational expenses. These factors include "the availability of satisfactory public schools, the child's attendance at private school prior to the separation and divorce, the child's special emotional or physical needs, religious training and family tradition." 22 Va. App. at 391, 470 S.E.2d at 160.

Here, the parties' children had attended private schools during the entirety of their parents' marriage. Further, the children were in the middle of a school year at the time of husband's instruction that the children be pulled out of private school and sent to public school. Husband's only grounds for insisting that his children be sent to public school was husband's personal determination that he could no longer afford to send his children to private school. This evidence was sufficient under our holding in Solomond to sustain the trial court's finding that husband should pay one-half of his children's private school tuition.

However, "implicit in the [child support] statutory scheme

is that educational expenses are included in the presumptive amount of child support as calculated under the Code." Smith v. Smith, 18 Va. App. 427, 435, 444 S.E.2d 269, 275 (1994). Here, the trial court ordered child support in excess of the presumptive amount and then also ordered husband pay one-half of his children's private school tuition. Even if the child support ordered had not exceeded the presumptive amount, the requirement that husband pay one-half of the children's tuition would effectively result in a child support award greater than the presumptive amount. As the trial court did not make written findings in support of the deviation from the presumptive amount of child support, we remand for redetermination of child support and if required, provision of written findings.

## Imputation of Income

Husband argues that the trial court erred in not imputing income to wife for purposes of determining spousal and child support because the evidence proves that wife is voluntarily unemployed. A party seeking spousal support is obligated to earn as much as he reasonably can in order to reduce the amount of support needed. Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). In keeping with this principle a court may, under appropriate circumstances, impute income to a party who seeks spousal or child support. Id. However, we have also held that where imputation of income is proper, the evidence must enable the trier of fact to reasonably project the amount to be imputed. Hur v. Virginia Department of Social Services, 13

Va. App. 54, 61, 409 S.E.2d 454, 459 (1991).

At trial, husband introduced testimony from Gail Austin, a health care professional recruiter, who testified that wife could work in the Charlottesville metropolitan area as a licensed professional nurse, earning between $26,000 and $37,900. However, Austin also stated that she had never seen wife's resume nor interviewed her.  Further, Austin testified that "the marketplace for nurses is fairly tight at this time" and that "[t]here are not a tremendous number of opportunities."  When asked to suggest "to a reasonable degree of certainty" what salary wife could obtain, husband's counsel agreed with the trial judge's observation that based on the fact that Austin had never met or interviewed wife, there were too many variables to answer the question.

We find the trial court did not abuse its discretion in refusing to impute income on the basis of this limited evidence. Austin provided generalizations about the nursing field, suggesting a broad salary range of $26,000 to $37,900, but had no specific knowledge of wife's qualifications for any particular position.  At the time of the hearings on these matters, wife was forty years of age and although she had maintained her nursing license, she had not worked since 1987.[3]  No evidence was introduced of specific job openings, the requirements for such

---

[3] The parties' second child, Garrett Wheaton, was born on December 1, 1987, and from that time on, wife acted as a full time mother and homemaker.

positions, their salaries, or the likelihood that wife would be hired for a particular nursing position.

## Vesting of Lump Sum Award

Section 9(b) of the parties' separation agreement, incorporated by the trial court into its final decree of divorce dated March 31, 1992, provided that: "Husband shall pay to Wife . . . the sum of $100,000.00 on the eleventh anniversary of the execution of this agreement."  In its order of March 22, 1996, addressing husband's petition for modification of support, the trial court stated that husband's "obligation for lump sum spousal support obligation in paragraph 9(b) of the Settlement Agreement is not effected by this order because of its vested and accrued nature."

Separation agreements are subject to the same rules of construction and interpretation as other contracts.  Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985).  It is well established that the "plain meaning" rule is to be employed when interpreting contracts.  Appalachian Power Co. v. Greater Lynchburg Transit Co., 236 Va. 292, 295, 374 S.E.2d 10, 12 (1988).  Clear and explicit language in a contract is to be understood in accord with its ordinary meaning, and if the meaning is plain when read, the instrument must be given effect accordingly.  Id.

In the separation agreement entered into by the parties and incorporated into the court's final decree of divorce, the parties specifically reserved the right to modify husband's payment obligations upon material and adverse change in his financial situation:

> Should Husband's financial situation
> materially change adversely the parties agree
> that Husband shall have the right, at his
> option, to renegotiate any and all provisions
> necessitating any payment by Husband to or
> for the benefit of Wife or for the infant
> children of the parties.

Consequently, we hold that the trial court's finding that the lump sum payment of $100,000 was "vested" and "accrued" was a misinterpretation of the terms of the separation agreement. Accordingly we remand to the trial court for removal of language indicating that the $100,000 lump sum payment is vested and accrued and for replacement of that language with language consistent with the parties' separation agreement.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

Coleman, J., concurring in part and dissenting in part.


I join in all aspects of the majority's opinion except the holding that the trial court did not abuse its discretion in refusing to impute income to the wife for purposes of determining spousal support.  Considering the husband's income and the value of his assets, the trial court did not err in awarding the wife spousal support.  However, in determining the amount of support to which the wife is entitled, the trial court is required to consider the wife's earning capacity.  Where she voluntarily chooses not to be gainfully employed, the court should impute to her the amount of income that she could reasonably earn considering her ability, training, education, age, health, and experience as well as the nature and availability of the jobs for which she is qualified.

Here, the majority upholds the trial court's refusal to impute any income to the wife because the expert witness was unable to state "to a reasonable degree of certainty the specific salary that the wife could earn due to the many variables that would go into that determination."  However, the evidence proved that the wife was a forty-year-old woman, in good health, trained as a licensed practical nurse, with experience in nursing as recent as 1987, and capable of earning between $26,000 to $37,900 in the Charlottesville area.  For the trial court to refuse to impute any income to the wife on this evidence is an abuse of discretion, in my opinion, and I would require the court on

remand to impute a reasonable amount of income to the wife who voluntarily chooses to be unemployed and to make no contribution to her own support.