COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia


FREDERICK W. PLAISTED

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0051-14-2                      JUDGE ROBERT J. HUMPHREYS
                                                    AUGUST 19, 2014

KIMBERLY F. PLAISTED


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                              T. J. Markow, Judge

              Robert L. Isaacs (Robert L. Isaacs, P.C., on briefs), for appellant.

              Melissa S. VanZile (Barnes & Diehl, P.C., on brief), for appellee.


        Fredrick W. Plaisted ("husband") was granted a divorce from his wife, Kimberly F.

Plaisted ("wife"), and now appeals the circuit court's equitable distribution award, spousal and

child support awards, and award of attorney fees for wife. Wife submits an assignment of

cross-error, arguing that the circuit court erred in not awarding her sixty percent of the marital

funds that husband withdrew from an individual retirement account (IRA) after the parties

separated.[1]

                                        I.  ANALYSIS

                                 A.  Equitable Distribution

        Husband argues that the circuit court erred in its equitable distribution award for six

reasons. "Fashioning an equitable distribution award lies within the sound discretion of the trial

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] As the parties are familiar with the record below and this is an unpublished memorandum
opinion that has no precedential value, we cite only those facts necessary to the disposition of this
appeal.

judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Husband first argues that "no authority exists" for the circuit court to order him to transfer his solely owned membership interest in Wellesley Centre, LC ("Wellesley") to wife. Husband purchased a three percent interest in Wellesley, a commercial real estate partnership, during the marriage. The interest is titled in husband's name alone. The circuit court classified Wellesley as hybrid property and ordered that husband shall receive two percent of the Wellesley interest and the remaining one percent interest shall be transferred to wife.[2]

Husband cites Code § 20-107.3(C), which provides in part,

> Except as provided in subsection G [pertaining to pensions, deferred compensation, and retirement benefits], *the court shall have no authority to order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owned or owed*. The court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, jointly owed marital debt, or any part thereof.

(Emphasis added). See also McGinnis v. McGinnis, 1 Va. App. 272, 276, 338 S.E.2d 159, 161 (1985) (holding that Code § 20-107.3(C) did not confer the circuit court with authority to allot to the wife personal property titled in the husband's name). The statute is clear. Husband is correct that the circuit court did not have the authority to order husband to transfer a one percent interest in Wellesley to wife pursuant to Code § 20-107.3(C). We therefore reverse this portion of the

---

[2] The parties argued the matter before the circuit court and that court stated, "if indeed it is determined that [transfer of the interest to wife] cannot be done, and I mean even if it goes on appeal and it's determined that I have no authority to do that, then [wife] should get an equivalent amount of monies from some other source. Move monies around, instead of him getting something, she would get this." We note that Code § 20-107.3(D) allows the circuit court to grant wife a monetary award for her interest in the marital portion of the Wellesley property, which may be paid in a lump sum or over time in fixed amounts. Additionally, "[t]he party against whom a monetary award is made may satisfy the award, in whole or in part, by the conveyance of property, subject to the approval of the court." Code § 20-107.3(D).

equitable distribution award and remand for the circuit court to reconsider its equitable distribution award in light of this decision.

Secondly, husband argues that "[t]he court was required to determine the value of Wellesley and Ships Watch before basing any equitable distribution award on those assets." Husband asserts that "neither Wellesley nor Ships Watch[3] should be included in the equitable distribution scheme, as no value for these assets, or no competent evidence of value has been introduced."

Code § 20-107.3(A) states that upon the decree of divorce "the court, upon request of either party, (i) shall determine the . . . ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property."

"Virginia's statute 'mandates' that the trial courts determine the ownership and value of all real and personal property of the parties." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). "But, consistent with established Virginia jurisprudence, the litigants have the burden to present evidence sufficient for the court to discharge its duty. When the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question." Id. "'Reviewing courts cannot continue to reverse and remand . . . [equitable distribution] cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review for their failure to introduce evidence at trial.'" Id. (quoting In re Marriage of Smith, 448 N.E.2d 545, 550 (1983)). Furthermore,

> Virginia's trial courts may, without doing violence to the statute, make a monetary award without giving consideration to the classification or valuation of every item of property, where the parties have been given a reasonable opportunity to provide the

---

[3] "Ships Watch" refers to an interest in a time share in Duck, North Carolina, which husband purchased a few months before the parties married.

- 3 -

> necessary evidence to prove classification or valuation but through their lack of diligence have failed to do so.

Id. at 618, 359 S.E.2d at 551.

Here, the contested issue is the total value of the property. The party that moves for equitable distribution bears the burden of proof on the valuation of property—in this case, husband. Id. Husband did not produce evidence of value on Wellesley or Ships Watch, although he had an adequate opportunity to do so.

As stated *supra*, the circuit court erred when it ordered transfer of an interest in Wellesley to wife because the property was titled only in husband's name. However, on remand the circuit court must consider the impact of the Wellesley interest remaining in husband's name on the equitable distribution between the parties. In order to do this, the circuit court must value husband's three percent interest in Wellesley by assigning a value in a dollar amount to his interest. Otherwise the circuit court cannot account for the benefit to husband in retaining the total Wellesley interest when redistributing other marital property between the parties.

Husband asserts that the stated value for Ships Watch of $62,000 could only be a guess. Wife introduced a listing agreement wherein husband and wife agreed to list the property for sale for $62,000 in November 2012. At the time of equitable distribution the property was still listed for sale for the same amount. While other evidence of value might be more persuasive, the circuit court is entitled to infer that the parties' asking price for the property is credible evidence of value of the property. The circuit court did not err in assigning a value of $62,000 to the Ships Watch property.

Next, husband asserts that "before Wife may receive an award from separate property, specifically Wellesley and North Shields, Wife must prove substantial marital or personal efforts and an increase in value."

The parties stipulated that Wellesley was acquired during the marriage. "All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Stroop v. Stroop, 10 Va. App. 611, 614-15, 394 S.E.2d 861, 863 (1990). "The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." Id. at 615, 394 S.E.2d at 863.

Husband presented evidence that he used inheritance funds to pay for $55,851 of the interest in Wellesley. While husband used inherited funds to pay for one-half of the investment, the balance of the investment was purchased with a promissory note for $55,851. Both husband and wife were listed on the promissory note. Husband testified that the promissory note was paid off by the Wellesley partnership's sale of other land. Husband is incorrect in asserting that this income from the Wellesley partnership that paid off the parties' note was not marital property. The income received from the Wellesley partnership was received not only because of husband's investment of inherited funds, but also because of the note that the parties together had on the Wellesley investment. The payment of the note was income to the parties[4] during the marriage. Income generated during the marriage is marital property, and property purchased with such funds is marital property. Id. Thus, one-half of Wellesley was purchased with marital funds and is marital property. Therefore, the circuit court did not err in classifying Wellesley as hybrid property without proof of substantial marital or personal efforts and an increase in value.

North Shields is a duplex property purchased by husband and his brother prior to the parties' marriage. Husband purchased his brother's interest in North Shields during the

---

[4] When an obligation to repay a debt is forgiven, the amount the borrower received as loan proceeds is normally reportable to the Internal Revenue Service as income because the borrower no longer has an obligation to repay the lender. See The Mortgage Forgiveness Debt Relief Act and Debt Cancellation, Internal Revenue Service, http://www.irs.gov/Individuals/The-Mortgage-Forgiveness-Debt-Relief-Act-and-Debt-Cancellation- (last updated Sept. 12, 2013).

marriage, but he testified that he used accrued rental proceeds from the property to pay for the brother's interest. North Shields was sold in November 2012, during the pendency of this divorce suit. The circuit court previously ordered that $200,000 of the proceeds be placed in escrow and distributed the balance of $85,453.45 to husband. In its final order, the circuit court classified this property as hybrid and distributed 35% of the property, or $99,909.25 of the escrow balance, to wife.

Despite the fact that North Shields was initially separate property, the evidence supports the circuit court's conclusion that it became hybrid property.

> In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of *either party* have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

Code § 20-107.3(A)(3)(a) (emphasis added).

In January 2001, the mortgage principal balance on the North Shields property was $74,910. That year, husband paid $8,000 on the mortgage from the parties' joint bank account. The mortgage on the North Shields property was paid off during the marriage. Husband also agreed that the parties put all of their income into the joint bank account and paid expenses for the properties out of the joint bank account.

Also during the marriage, a two story deck was added to the property. Wife testified that a large tree was removed, providing off-street parking and thus making the unit much more attractive to rent. They added new hardwood floors, new tile in the kitchen, new kitchen appliances, a new roof, a new drainage system (because the basement had been flooding), and expanded the living space in the back. These improvements also made the property easier to rent. Wife met with contractors and locked up the property after the contractors were done. She met with the design and construction company when they were putting in the decks and

designing the new backyard. Wife also introduced numerous invoices for work done to the property during the marriage. A reasonable fact finder could conclude from this evidence that marital property and personal efforts of both husband and wife contributed to a substantial increase in value of the North Shields property. The circuit court did not err in classifying Wellesley and North Shields as hybrid properties as opposed to separate property.

Husband also argues that he should be granted an equitable distribution award of wife's Roth IRA that he created and managed. The circuit court distributed 100% of the Roth IRA titled in wife's name to wife after considering that husband took large sums of money from marital accounts that he did not account for.

While a circuit court is required to properly classify marital property as such, it is not required to award a party any part of a particular marital asset so long as the overall distribution of the marital property is equitable. Srinivasan, 10 Va. App. at 733, 396 S.E.2d at 678. It may be appropriate for the circuit court to make provisions for the parties from different assets. See id. (holding that the circuit court did not err when it made provisions for the wife from marital property other than the husband's pension). Here, the circuit court recited that it considered all of the equitable distribution factors in Code § 20-107.3 in fashioning the award, and it distributed more of some assets to husband and more of other assets to wife. Aside from the distribution of wasted marital assets, much of the marital property was divided 60/40 in favor of husband. The overall distribution of the marital property is equitable. The circuit court did not err in awarding wife 100% of the Roth IRA titled in her name.

Next, husband argues that the circuit court erred in its equitable distribution award because "usage of marital assets for support obligations, living expenses and legal fees is not waste."

"Waste" is characterized as the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988). "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990). Use of funds for living expenses while the parties are separated does not constitute waste. Id. at 587, 397 S.E.2d at 261. Expenditure of marital funds for court-ordered support payments "is a valid marital purpose and does not constitute dissipation of marital assets." Thomas v. Thomas, 40 Va. App. 639, 645-46, 580 S.E.2d 503, 506 (2003). Finally, payments for attorney's fees for the divorce proceedings are also expenditures for a proper purpose. See Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992).

Wife demonstrated that husband caused thousands of dollars to be withdrawn from marital accounts. Husband concedes and the circuit court found that after separation he withdrew $121,357.76 from the Merrill Edge Investment Account, depleted the Bank of America Money Market Account, which held $47,576.96 in marital funds, and depleted the Northwestern Mutual Whole Life Policy, a hybrid property which held $24,973.85 in marital funds. The marital funds withdrawn by husband from these accounts totaled $193,908.57. The circuit court considered husband's income and court-ordered support payments for 2011 and 2012. The circuit court found that husband's required support payments for the two years exceeded his salaried income for the two years by a total of $54,763. The circuit court determined that this amount spent on support payments was not waste. As for personal maintenance and attorney fees, it appears that husband only provided a personal expense statement for 2013 and one month's invoice from an attorney, dated July 29, 2013, whereas husband's withdrawals from

these accounts occurred in 2011 and 2012. The court deducted $54,763 in support payments from the $193,908.57 in marital funds withdrawn by husband and determined that the balance of $139,145.57 was marital waste. The evidence supports the circuit court's finding that husband did not provide a sufficient accounting proving that he used these marital funds for his own maintenance and legal fees. Consequently, the court divided the $139,145.57 in waste 60/40 in favor of wife.

Wife asserts that husband also wasted the $250,185 in martial funds that he "caused to be withdrawn" from the Merrill Edge OP53 SEP IRA in 2013. Wife challenges in a cross-assignment of error that "[t]he trial court erred in not awarding [her] 60% of the total funds caused to be withdrawn by Husband from the Merrill Lynch OP53 in its Final Decree."

The circuit court clearly found that husband committed waste of some of the parties' marital property, but it did not include in its waste calculation the funds that husband admitted he withdrew from the parties' OP53 SEP IRA account in 2013. Husband testified that he did not receive all of the $250,185 he "caused to be withdrawn" because his withdrawals from this account were taxed at a federal rate of thirty-nine percent and penalized by ten percent. State taxes were also withheld for the withdrawals. Husband testified that he withdrew from this account to pay support and legal fees. Husband's testimony that he spent the money from this account on support and legal fees supports the circuit court's ultimate decision that he did not waste these marital funds.[5]

Therefore, the circuit court obviously considered husband's testimony regarding his use of some of the marital funds after separation for support and legal fees. The circuit court did not

---

[5] Because the circuit court did not find that husband wasted the marital funds withdrawn from the OP53 SEP IRA, the circuit court did not err in valuing the asset as of the date of the evidentiary hearing and distributing to wife a forty percent share, as opposed to the sixty percent share that the court awarded wife of the wasted assets.

err in finding that husband committed waste of the balance of the marital funds he withdrew when he did not more specifically account for the use of the funds.

Finally, husband argues that the circuit court "abused its discretion in its equitable distribution award, specifically with respect to Wellesley, Ships Watch, North Shields and Wife's Roth IRA."[6] He asserts that the circuit court did not fully consider his economic contributions to the marital partnership and its decision does not represent a fair division of the economic partnership. Husband focuses only on the equitable distribution factor concerning the parties' monetary contributions to the marital partnership. See Code § 20-107.3(E)(1).

Contrary to husband's representation, the circuit court expressly recognized husband's significant monetary contributions to the marital estate. The circuit court first acknowledged that husband was the sole wage earner in the marriage and he applied his knowledge of the real estate business to grow the parties' marital estate. The court also found that wife added little to the acquisition, care, and maintenance of the marital estate. However, the circuit court recited that it considered *all* of the equitable distribution factors in Code § 20-107.3(E), and accordingly found that wife made a far greater contribution to the well-being of the family. The court also found that husband was physically and verbally abusive to wife and had substance abuse problems and that his treatment of wife was the primary contributing factor in causing the dissolution of the marriage.

Further, the circuit court's division of the North Shields and Ships Watch properties was supported by the evidence. Regarding North Shields, both parties contributed personal efforts during the marriage and funds from their joint checking account to the maintenance and

---

[6] The distribution of Wellesley is reversed on other grounds, addressed *supra*. Therefore, we will not address the distribution of Wellesley in our analysis on this assignment of error.

- 10 -

improvement of the property. As for Ships Watch, husband purchased the property for $25,000 a few months prior to the marriage. However, the note on the property was modified during the marriage and at least $26,000 of the note was paid from the parties' joint checking account. The circuit court classified North Shields and Ships Watch as hybrid properties and awarded husband a greater share of the properties. The award of wife's IRA to wife is appropriate as discussed above.

> [U]nless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution award will not be reversed on appeal.

Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990). We do not find that the circuit court erred in its equitable distribution award of these assets.

## B. Support

Husband also assigned several errors to the circuit court's spousal and child support awards. First, husband asserts that "a proper application of the mandatory § 20-107.1 statutory factors would not have resulted in a spousal support award that outstripped [his] resources."

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998). The court's spousal support award "will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial court only when its decision is plainly wrong or without evidence to support it." Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992).

"In determining the amount of [a spousal support] award, the court must consider all the factors set forth in Code § 20-107.1. The court's decision is presumed correct and will not be disturbed unless some injustice has been done." Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996). A "'court may impute income to a party who is voluntarily

unemployed or underemployed.'" Id. at 708, 473 S.E.2d at 74 (quoting Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994)). "The trial court, in determining whether to award support and the amount thereof, may consider *earning capacity* as well as actual earnings in fashioning the award." Id. (emphasis added). Other factors included in Code § 20-107.1 are "the property interests of the parties, both real and personal, tangible and intangible" and "the provisions made with regard to the marital property under § 20-107.3."

Here, the circuit court accepted husband's representations that he earned employment income of $50,425 in 2010, $31,341 in 2011, and $37,561 in 2012. The circuit court indicated that it was skeptical of these amounts, noting that "from its experience that former high earners seem to hit rock bottom during divorce proceedings." However, it found that there was no evidence to the contrary and thus husband's income is $3,176 per month. The circuit court imputed income to wife of $2,822 per month (imputing income at $28,200 per year plus a one percent interest in Wellesley). Wife submitted that her monthly expenses are $8,288.78. The circuit court ordered husband to pay $2,500 per month to wife in spousal support.

The circuit court considered husband's arguments that he does not have the ability to pay wife. The circuit court clearly considered husband's stated earnings from his employment. However, the circuit court was also required to consider husband's other property interests, the property distributed to him in equitable distribution, the standard of living established during the marriage, the parties' earning capacities, and the parties' decisions regarding their employment and careers. Code § 20-107.1. The circuit court considered that wife did not work outside the home during the marriage and committed the entire marriage to maintaining the home and caring for the parties' child. The court also observed that wife is a college graduate who is articulate and competent, but would not earn much in the near future. The circuit court found that there are no physical or mental conditions which affect the support award. The evidence in the light most

- 12 -

favorable to wife established that husband turned down two job opportunities in 2012.  Husband continued to pursue his sole proprietorship although it was not very successful.  Therefore, the circuit court is entitled to find that husband's earning capacity is greater than his current earnings and that he has real and personal property from which he can obtain funds.  The circuit court considered the statutory factors in Code § 20-107.1 as required, and we do not find an abuse of discretion in its award of $2,500 in spousal support to wife.[7]

Next, husband argues that "the court erred in deviating upwards from the guideline child support as set forth in Virginia Code § 20-108.2" and that it "applied the wrong standards in requiring husband to pay for private school tuition."

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence."  Smith v. Smith, 18 Va. App. 427, 433, 444 S.E.2d 269, 274 (1994).

The circuit court found that, according to the statutory guidelines, husband's child support obligation is $65 per month.  However, the court decided to depart from the guidelines "[c]onsidering the lifestyle the Plaisteds enjoyed, [husband's] private school education, and the best interest of the child."  The circuit court ordered husband to pay $650 per month in child support and the $18,880 annual private school tuition for the child.

When a court deviates from the guidelines for child support, it

> shall state the amount of support that would have been required
> under the guidelines, shall give a justification of why the order
> varies from the guidelines, and shall be determined by relevant
> evidence pertaining to the following factors affecting the
> obligation, the ability of each party to provide child support and
> the best interests of the child . . . .

---

[7] We note that on remand the circuit court will need to address the impact of the non-distribution of the one percent of the Wellesley interest to wife on the spousal support award, as non-distribution of the interest will increase husband's income and decrease wife's income.

Code § 20-108.1(B). The Code § 20-108.1(B) factors include custody arrangements; imputed income to a party who is voluntarily under-employed; educational expenses ordered by the court for the child's benefit; "extraordinary capital gains such as capital gains resulting from the sale of the marital abode;" any special needs of a child; standard of living for the child established during the marriage; earning capacity, obligations and financial resources of each parent; and provisions made with regard to the marital property under Code § 20-107.3, where said property earns income or has an income-earning potential.

Here, the circuit court stated the amount of support according to the guidelines and then specified that the standard of living and special needs of the child are factors that justify a deviation from the child support guidelines. "If the applicability of the factors is supported by the evidence and the trial judge has not otherwise abused his or her discretion, the deviation from the presumptive support obligation will be upheld on appeal." Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991). The evidence supports the circuit court's findings that the parties established a high standard of living during the marriage and that the daughter has special needs that are discussed *infra*. The circuit court did not abuse its discretion in ordering child support in excess of the support calculated using the guidelines.

As for the private school tuition, this Court has found that "'a parent may be required to pay for private educational expenses, even though such expenses exceed the guidelines, when there is a demonstrated need for the child to attend private school and the parent has the ability to pay.'" Joynes v. Payne, 35 Va. App. 386, 407, 545 S.E.2d 561, 571 (2001) (quoting Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 704 (1999)). "In making this determination, the trial court must consider 'factors such as the availability of satisfactory public schools, the child's attendance at private school prior to the separation and divorce, the child's special

emotional or physical needs, religious training, and family tradition.'" Id. (quoting Solomond v. Ball, 22 Va. App. 385, 391, 470 S.E.2d 157, 160 (1996)).

There is sufficient evidence in this record to support the circuit court's determination that the daughter should attend private school and that husband should pay for it. Wife testified that the daughter is a gifted but high needs child. She needs special attention and enrichment at school considering her attention deficit and hyperactivity disorder (ADHD), indicators of autism spectrum disorder, and post-traumatic stress disorder. Wife testified that the child's teachers, doctors, and an educational psychologist say she needs special attention. Wife spoke with a counselor at a public school who told her that the public school could not offer the child the special attention she needs. The child had not previously attended private school because she was just starting kindergarten at the time of the hearing. Wife also introduced evidence that husband desired for the child to be tested for and apply to private schools. Husband also attended private schools.

Wife cashed in a mutual fund that was her separate property to pay for the first tuition installment. Wife said she did not know how she would pay for the next tuition installment. Husband asserts that he does not have the ability to pay the child support and private school tuition along with the spousal support. The circuit court acknowledged that he could not pay these obligations with his current stated salary but suggested that he pay with his savings or investments. Husband asserts that the circuit court should not consider the principal of his remaining assets in deviating from the child support guidelines. However, the circuit court may order support that requires a payor spouse to draw from sources other than salary. Driscoll v. Hunter, 59 Va. App. 22, 33-34, 716 S.E.2d 477, 482 (2011). Wife correctly points out that husband has or will receive numerous financial resources as a result of the equitable distribution award. Given these resources, in addition to husband's income, we do not find that the circuit

court abused its discretion in ordering husband pay $650 in child support and the child's private school tuition.

## C. Attorney Fees

Husband argues that the circuit court abused its discretion in awarding wife attorney fees. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Wife incurred over $75,000 in attorney fees by July 2013. The circuit court provided in its final order that husband shall pay $35,000 of wife's attorney fees. The circuit court summarized its considerations and the evidence in support of this award:

> Husband is on his fourth attorney. While he has every right to select his attorney, each new attorney had to learn the case which inevitably resulted in an impact on counsel for the other side.
>
> Whether because of the multiple attorneys or not, there have been more than a dozen hearings on discovery matters, show causes, etc., mostly caused by [husband]. [Wife] should not have to pay for these unnecessary expenses. The court will require [husband] to pay [wife] $35,000.00 towards her attorneys' fees.

The circuit court did not abuse its discretion in awarding wife attorney fees.

## D. Wife Requests Attorney Fees on Appeal

Wife requests attorney fees and costs incurred in this appeal. O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). We find that husband's appeal is not frivolous. Indeed, he raised one point, regarding the circuit court's distribution of Wellesley, that merits reversal. Further, wife raised her own assignment of error on appeal. Therefore, we deny wife's request for attorney fees for this appeal.

## II.  CONCLUSION

For the foregoing reasons, we reverse the circuit court's order that husband transfer a one percent interest in Wellesley to wife, and remand solely for the circuit court to reconsider the value of husband's Wellesley interest and the impact of the non-distribution of the interest on the overall equitable distribution and spousal support awards.  We affirm on all other issues.

<u>Affirmed in part, reversed and remanded in part.</u>