**Richmond**

VERONICA G. SMITH

v.

R. GORDON SMITH

No. 1220-93-2

Decided May 24, 1994

428

COUNSEL

Lawrence D. Diehl, for appellant.

James C. Roberts (Mays & Valentine, on brief), for appellee.

OPINION

**ELDER, J.**—Veronica G. Smith, wife, appeals from the trial court's equitable distribution and child support awards in her divorce from R. Gordon Smith, husband. On appeal, wife contends

the trial court erred in fashioning the equitable distribution in ruling that she failed to prove her husband dissipated marital assets in support of his extramarital relationship, and in modifying the final decree to allow husband to satisfy the equitable distribution award in periodic payments rather than through one lump sum payment, as initially ordered. She also contends the trial court erred in its calculation of the child support award in failing to include husband's capital gains income in its determination of the presumptive amount of child support, and in failing to require husband's payment of the cost of their son's private education expenses in addition to the amount of presumptive child support. Husband contends that the assignments of error concerning the child support award are barred by Rule 5A:18. For the reasons that follow, we affirm the equitable distribution and child support awards.

The parties married in 1969, separated in 1990, and filed for divorce in 1991. During the divorce proceedings, husband admitted to a fifteen-year extramarital affair with a woman, whom he saw at least once a year in a variety of locations, sometimes on business trips for which he was partially reimbursed. As to his income, husband testified that, during 1991, he conducted six different transactions in which he sold marital stocks, realizing approximately $165,000 in capital gains. The record contains no evidence that husband had any capital gains income after September 30, 1991. Husband testified that he used $40,000 of the gains realized to make a down payment on a condominium he purchased in 1991, which he stipulated was a marital asset for purposes of calculating the equitable distribution award. The remainder of the money was used to pay various marital debts.

The evidence also showed that the parties' son has a learning disability. Prior to the commissioner's hearing, husband had been paying directly to the school $788 per month for private school tuition and tutoring for his son. Based on the parties' incomes, the court ordered husband to pay wife the presumptive amount of monthly child support—$2,095. Although husband had voiced a desire to continue paying his son's educational expenses, the court stated that wife had to pay the child's educational expenses in the amount of $788 per month out of the $2,095 child support award.

The trial court ordered husband to satisfy the equitable distribution award of $325,000 by making one lump sum payment to

wife within ninety days of the entry of the award. Ultimately, however, the trial court granted husband's request to modify the decree to permit husband to pay the award and interest in four annual installments.

## I.

### A.

■ Wife contends that the trial court erred in fashioning the equitable distribution award by refusing to consider husband's dissipation of marital assets, which she alleges occurred as a result of and during the course of his fifteen-year extramarital affair. Ordinarily, when making an equitable distribution award under Code § 20-107.3(A), a court determines the value of marital property "as of the date of the evidentiary hearing on the evaluation issue." The Code also provides that, up until twenty-one days before the hearing, either party may move the court to use a different valuation date "for good cause shown, in order to attain the ends of justice." *Id.*

One recognized justification for altering the evaluation date is a showing of dissipation of marital assets.

> Dissipation occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage *at a time when the marriage is undergoing an irreconcilable breakdown.*" Once the aggrieved spouse shows that marital funds were either withdrawn or used *after the breakdown*, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose.

*Clements v. Clements*, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990) (emphasis added) (citation omitted).

■ Our case law uniformly holds that the challenged use of funds must be "in anticipation of divorce or separation . . . [and] at a time when the marriage is in jeopardy." *Booth v. Booth*, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988); *see Alphin v. Alphin*, 15 Va. App. 395, 402, 424 S.E.2d 572, 576 (1992) (involving withdrawal of funds from joint account shortly after separation); *Amburn v. Amburn*, 13 Va. App. 661, 664-66, 414 S.E.2d 847, 849-51 (1992) (involving wife's post-separation use of assets for living expenses and child's educational expenses, necessitated

by husband's breach of separation agreement); *Stroop v. Stroop*, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990) (involving transfer of property from wife to her brother eight months before institution of divorce suit and for less than adequate consideration). Wife is correct in her assertion that the Court in *Booth* defined waste only "generally" and did not purport to set forth "an exclusive definition." *Booth*, 7 Va. App. at 27, 371 S.E.2d at 572. Nevertheless, to date, Virginia's appellate courts have applied this rule only to funds spent contemporaneously with the marital breakdown,[1] and we will not expand the definition to cover expenditures made for a fifteen-year period which were not specifically for the purpose of depleting the marital estate and where there was no evidence that there was an irreconcilable breakdown of the marriage. Accordingly, we conclude that the trial court did not err by finding that wife failed to show that husband's pre-separation expenditures constituted dissipation of marital assets.

■ Our holding does not allow the husband to benefit financially from his continuing deceit. We agree with the commissioner that, under the existing statutory scheme, husband's pre-separation use of marital funds in pursuit of his extended extramarital affair would be "more appropriately addressed with the circumstances and factors which contributed to the dissolution of the marriage," as required under Code § 20-107.3(E)(5), to the extent that it had any significant impact on the value of the marital estate. *See Aster v. Gross*, 7 Va. App. 1, 5-6, 371 S.E.2d 833, 836 (1988). The court may also consider the negative impact of the affair on the well-being of the family, *see* Code § 20-107.3(E)(1), and the mental condition of the parties. *See* Code § 20-107.3(E)(4).

---

[1] Our holding in *Marion v. Marion*, 11 Va. App. 659, 401 S.E.2d 432 (1991), does not require a different result. In that case, we affirmed the ruling of the trial court on the ground that the record did not substantiate "wife's claim that the husband [had] spent substantial amounts of money on vacations during his affair." *Id.* at 665, 401 S.E.2d at 436. Although wife appears to argue that the Court in *Marion* would have found dissipation based on an affair alleged to have occurred two years prior to the separation if the evidence as to spending had been sufficient, that case involved allegations of two different affairs—one occurring two years prior to the couple's separation and another occurring between the separation and the divorce—and the trial court found only the latter to be substantiated. *Id.* at 662, 401 S.E.2d at 435. Accordingly, the decision in *Marion* did not address the issue wife raises in this case.

Finally, although statutory and case law permit the wife to receive credit for marital funds expended by husband after the formal marital breakdown, the evidence presented in this case is insufficient to justify such an award. Although husband admitted that his paramour accompanied him periodically on trips, he testified that some of these were reimbursed business trips. Wife's evidence failed to show which post-separation trips involved husband's paramour and of those that did, whether they were reimbursed business expenses or paid for out of marital funds. Therefore, we cannot conclude that the trial court erred in refusing to hold that husband dissipated marital funds either before or after the separation.

## B.

Wife also contends that the trial court erred in modifying the final decree to allow husband to pay the equitable distribution award in four periodic payments rather than in one lump sum, as it had originally ordered in the final decree of divorce. We are guided by the following principles:

The chancellor is necessarily vested with broad discretion in the discharge of the duties the statute [Code § 20-107.3] imposes upon him. Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

*Brown v. Brown,* 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987) (quoting *Smoot v. Smoot,* 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987)).

After careful review of the record, we conclude that the chancellor did not abuse his discretion in modifying the final divorce decree. First, the trial court acted within its authority because it modified the final decree within twenty-one days of its entry, as allowed under Rule 1:1. In addition, Code § 20-107.3(D) permits the court to make any monetary award under this section "payable either in a lump sum or over a period of time in fixed amounts." No showing of a change in circumstances was required to justify the modification.

## II.

Wife presents two assignments of error dealing with the calculation of the child support award. She contends that the trial court erred in failing to include husband's 1991 capital gains in calculating his gross income for purposes of determining the presumptive amount of support and in failing to require husband to continue paying their son's private school tuition and tutoring expenses.

█ Husband asserts that wife's appeal of these issues is barred under Rule 5A:18 because she failed to raise them in a timely manner at the trial level. We conclude that wife properly preserved both issues for appeal. As to the capital gains issue, wife filed a timely motion to reconsider following entry of the final decree of divorce on May 24, 1993. On June 8, 1993, during the twenty-one day period within which the trial court retained jurisdiction over the final order, wife filed a motion to reopen or modify the amount of child support based on the trial court's failure to include husband's capital gains in his gross income. At the hearing held on June 11, 1993, also within the twenty-one day period following entry of the final decree, the trial court denied wife's motion. As we held in *Lee v. Lee*, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (en banc), "[c]ounsel may meet the mandates of Rule 5A:18 in many ways." Because here, as in *Weidman v. Babcock*, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991), a motion for rehearing was both filed and ruled upon within the twenty-one day period, we conclude that wife properly preserved this assignment of error for appeal. *See Lee*, 12 Va. App. at 515, 404 S.E.2d at 738. The tuition expense objection also was properly preserved. Wife raised precisely this issue in her December 16, 1992, exceptions to the commissioner's report and renewed her objection, although not quite so articulately, in her motion to reconsider of June 8, 1993. Under the holding in *Lee*, we conclude that the dictates of Rule 5A:18 have been satisfied. *Id.*

█ Despite proper preservation, wife's arguments fail on the merits. Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence. *Young v. Young*, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986). In all proceedings to award child support originating after July 1, 1989, the court must apply the provisions of Code §§ 20-107 and 20-108.

*See, e.g., O'Brien v. Rose,* 14 Va. App. 960, 963, 420 S.E.2d 246, 248 (1992). These sections provide for the calculation of a "presumptive" amount of child support as a percentage of the parents' combined gross monthly incomes. Code § 20-108.2 establishes a rebuttable presumption that this percentage is appropriate under the circumstances, and if the trial judge wishes to deviate from the presumptive amount for any of the reasons set forth in Code § 20-108.1, he or she must make findings of fact to justify the deviation. *O'Brien,* 14 Va. App. at 964, 420 S.E.2d at 248-49.

Code § 20-108.2(C) states that " 'gross income' . . . shall include . . . commissions, royalties, bonuses, . . . capital gains," and the like. However, the statute itself contains no express contemporaneousness requirement, and literal compliance with the terms of the statute could be interpreted to require inclusion of capital gains, bonuses, or other irregular forms of income received many years prior to the support proceedings. This would result in the artificial inflation of income, which clearly would not effect the intent of the legislature. *See* Code § 20-108.1(B)(7). We hold, therefore, that where the evidence shows that the realization of capital gains was an irregular occurrence and was not contemporaneous with the support proceeding, the trial judge does not abuse his discretion by failing to include the gains in calculating gross monthly income.[2] The record in this case supports such a result. It shows that husband engaged in six different stock transactions between January and September of 1991 and that all proceeds were applied to reduce marital debts or to acquire other marital property. No income realized from the capital gain remained as a liquid asset from which support could be paid. This asset had been used to reduce marital debt or enhance the marital estate and presumably was taken into account and impacted the equitable distribution. There is no evidence that husband realized any capital gains between October 1, 1991, and the commissioner's hearing in April 1992, or that he anticipated receiving such gains at any point in the future. If husband has realized any capital gains since the court last received evidence on this matter, wife is free to request a modification of the award based on a

---

[2] We also note that the evidence in this case shows that all proceeds were used to reduce joint marital debts or to acquire other marital property. Therefore, even if the court had included capital gains in its child support calculations, it would have been required to increase each party's gross income proportionately rather than by attributing all gains to husband.

change in circumstances.

Even if the capital gains at issue in this case had been realized contemporaneously such that the court would have been required to include them, it nevertheless would have been justified in deviating downward from the presumptive amount of support to reach the same result. Recognizing the possibility that various aspects of the equitable distribution and other divorce proceedings could result in artificial inflation of the parties' gross monthly incomes as calculated under Code § 20-108.2(C), the legislature expressly allowed for downward deviation from the presumptive amount of child support if these calculations included "[e]xtraordinary capital gains such as capital gains resulting from the sale of the marital abode." Code § 20-108.1(B)(7). The evidence in this case would have supported a deviation under this provision: the gains realized were extraordinary, and they were used to provide for the parties' separate maintenance and to reduce their joint debt.

Wife's assertion that the court erred by requiring her to pay her son's tuition expenses out of the child support award also is without merit. Implicit in the statutory scheme is that educational expenses are included in the presumptive amount of child support as calculated under the Code. Code § 20-108.1(B)(6), which states that "[d]irect payments ordered by the court for . . . education expenses" provides grounds for deviating from the presumptive amount, makes this clear. In this case, because the trial court chose not to deviate from the presumptive amount of child support, no findings of fact were necessary. Nevertheless, the record shows that the court was cognizant of both the magnitude and continuing nature of the expenses when it ordered wife to pay, out of the $2,095 award, "the child's education expenses in the amount of $788.00 per month previously paid by [husband]."

Although wife contends that the trial court erred in determining that the amount of the child's educational expenses totalled $788, the evidence in the record supports the trial court's finding. Husband first submitted Plaintiff's Exhibit 9, which showed the son's total educational expenses (including tuition and special tutoring) to be approximately $750 per month, and he later submitted Plaintiff's Exhibit 9a, which showed the total expenses to be $788.80 per month. Wife presented no evidence to show that these figures were in error, and, although she alleged in her motion to reconsider or modify the decree that son's educational expenses

had increased to over $1000 per month, she presented no evidence to support her assertion. On the evidence presented, we cannot conclude that the trial court abused its discretion in refusing to deviate from the presumptive amount.

For these reasons, we affirm the ruling of the trial court.

*Affirmed.*

Moon, C.J., and Coleman, J., concurred.