BENTON, Judge,
concurring in part and dissenting in part.
I concur in Parts I ánd II; however, I dissent from Part III. Therefore, I would reverse the decree and remand for reconsideration of the monetary award for the reason stated in Part II and for the additional reasons contained below.
(A)
The evidence proved that the husband brought into the marriage $239,000 in assets that were used for marital purposes. During the marriage, he annually earned substantial salaries, including $409,000 in one year, that were used to support the wife and her children from a prior marriage. At trial, the wife argued that, during the course of their nineteen-year marriage, the husband “depleted the marital estate by $50,000 to pay a separate debt [of court-ordered support to his former spouse].” Apparently believing the evidence proved dissipation, the trial judge agreed with the wife’s argument and “conclude[d] that the commissioner recognized [the wife’s] argument that [the husband’s] contributions to the marriage should be reduced by spousal support he paid to his ex-wife and that ... [the commissioner] considered these payments.” The majority opinion rules that the trial judge did not err because the husband’s payments were appropriately considered under Code § 20-107.3(E)(2) as a negative monetary contribution to the marriage. I believe both rulings are incorrect.
“Code § 20-107.3, providing for equitable distribution, is based on the notion that marriage is an economic partnership in which the parties, through varying contributions, monetary and nonmonetary, to the acquisition, maintenance, and care of *545 property and to the well-being of the family, may accumulate marital wealth.” Dietz v. Dietz, 17 Va.App. 203, 210, 436 S.E.2d 463, 467 (1993). Code § 20-107.3 mandates an equitable distribution of the parties’ accumulated marital wealth. See Gamble v. Gamble, 14 Va.App. 558, 570, 421 S.E.2d 635, 642 (1992). Thus, we have ruled that “what has always been contemplated by the Code § 20-107.3 scheme for equitable distribution of the marital wealth of the parties ... [is] a distribution which will equitably ‘compensate a spouse for his or her contribution to the acquisition of property obtained during the marriage.’ ” Id. at 569, 421 S.E.2d at 642 (citation omitted).
A trial judge may not apply the statute in a manner that does not further the statute’s purpose and policy. “Every statute is to be read so as to ‘promote the ability of the enactment to remedy the mischief at which it is directed.’ ” Bulala v. Boyd, 239 Va. 218, 227, 389 S.E.2d 670, 674 (1990) (citation omitted). Nothing in the letter or the spirit of the statute authorizes judges to examine the parties’ lifestyle choices and conclude post facto that they could have better used their incomes to accumulate more wealth. Thus, a trial judge may not, under the guise of applying Code § 20-107.3(E), rotely consider a party’s use of income or marital assets to pay a debt during the course of marriage as a factor in the distribution of marital property or in making a monetary award. We have recognized that the statute is not a license for judges to make a post facto examination of the spending of the husband and wife during the marriage to determine whether they made prudent decisions in using their incomes or marital assets to pay for necessities of life. Thus, we previously have stated that, “at least until the parties contemplate divorce, each is free to spend marital funds.” Booth v. Booth, 7 Va.App. 22, 27, 371 S.E.2d 569, 572 (1988).
Although some of the factors in Code § 20-107.3(E) might be broadly read to encompass future conduct, in Marion v. Marion, 11 Va.App. 659, 401 S.E.2d 432 (1991), we noted that the legislative purpose had to be considered in making equitable distributions. See id. at 668, 401 S.E.2d at 438. We held *546 that “ ‘Code § 20-107.3 provides for the equitable distribution of the accumulated marital wealth between the marital parties; it does not contemplate consideration of the future ability of one spouse to accumulate what will be separate property or the future needs of the other spouse.’ ” Id. (citation omitted). See also Stainback v. Stainback, 11 Va.App. 13, 21-22, 396 S.E.2d 686, 691-92 (1990).
We also have ruled that not all past conduct of the parties during a marriage affects the equitable distribution of property. In Smith v. Smith, 18 Va.App. 427, 444 S.E.2d 269 (1994), the wife contended the trial judge erred by not considering as a factor the “husband’s dissipation of marital assets, which she alleges occurred ... during the course of his fifteen-year extramarital affair.” Id. at 430, 444 S.E.2d at 272. In rejecting that contention, we ruled as follows:
Our case law uniformly holds that the challenged use of funds must be “in anticipation of divorce or separation ... [and] at a time when the marriage is in jeopardy.” Wife is correct in her assertion that the Court in Booth defined waste only “generally” and did not purport to set forth “an exclusive definition.” Nevertheless, to date, Virginia’s appellate courts have applied this rule only to funds spent contemporaneously with the marital breakdown, and we will not expand the definition to cover expenditures made for a fifteen-year period which were not specifically for the purpose of depleting the marital estate and where there was no evidence that there was an irreconcilable breakdown of the marriage. Accordingly, we conclude that the trial court did not err by finding that wife failed to show that husband’s pre-separation expenditures constituted dissipation of marital assets.
Id. at 430-31, 444 S.E.2d at 272 (citations omitted).
During the marriage, the parties may at any time properly use marital income that they earn for nonmarital purposes. Only when one party claims an impropriety or improper dissipation of marital assets that impacts a statutory purpose should the court intervene and construct a financial accounting *547 of income and expenditures during the marriage. No valid purpose of Code § 20-107.3 is served by analyzing the debts the parties paid during the marriage to determine which spouse gained the greater benefit from payment of the debt and then using that benefit analysis to support a set-off to the other spouse when making a distribution of property upon divorce. Obviously, if the debt bears some significance to the purpose of the property division, such as dissipation in contemplation of or after marital dissolution, the evidence establishes a nexus to the statutory purpose.
In this case, the husband’s payment during the marriage of spousal support to a former spouse bears no significant relationship to the statutory purpose of Code § 20-107.3. It is not unusual that parties enter into marriage with either or both having separate antenuptial debts. The payments of spousal support in this case were not made to obtain or maintain a separate asset that the husband can sell, trade, or transfer for money after the divorce. No inequity justifies the trial judge’s use of these payments to increase the property distributed to the wife on divorce. The husband’s spousal support payments were no different than any other expenditure made during the marriage for a purpose solely benefit-ting the husband, such as dues to a golf association, membership in a racquetball club, contributions to a church building fund, dues at a private club, or expenditures on a hobby that did not result in the acquisition of an asset.
To authorize a set-off or credit in the distribution of the marital property because certain expenditures made during the marriage benefitted the husband finds no support in the language or purpose of the statute. Indeed, the lack of logic in this decision is doubly manifest because the record contains no indication that the trial judge considered the favorable tax benefits the parties received as a result of the spousal support payments. To the extent the wife contends the husband’s payments deprived her of the ability to spend the money during the marriage for something that directly benefitted her, she ignores the benefit the tax savings provided.
*548 No evidence in this record tends to prove the husband’s payment of spousal support to his former spouse pursuant to a court’s order affected any factor contained in Code § 20-107.3(E). Clearly, the trial judge confused this issue with “dissipation” or “waste.”
Although not an exclusive definition[,] “waste” may be generally characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy. Just as a court may consider positive contributions to the marriage in making an equitable distribution award, it can also consider “negative” contributions in the form of squandering and [destroying marital resources. The goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably. The mechanism to accomplish that goal is the monetary award. To allow one spouse to squander marital property is to make an equitable award impossible. On the other hand, at least until the parties contemplate divorce, each is free to spend marital funds.
Booth, 7 Va.App. at 27, 371 S.E.2d at 572.
The Virginia cases do not support either the trial judge’s ruling or the majority’s opinion. In Gamer v. Gamer, 16 Va.App. 335, 429 S.E.2d 618 (1993), the husband and wife received during the marriage money that should have been sent to the husband’s former spouse. The husband and wife spent the money for living expenses. See id. at 338-39, 429 S.E.2d at 621. The debt, which was created by their receipt and expenditure of money that was not theirs, was reduced to a judgment and became a lien against the marital residence. See id. at 341, 429 S.E.2d at 623. Applying Code § 20-107.3(E)(7), we ruled that “[w]here the debt was secured by marital assets or was a lien on marital property, the purpose, nature, and character of the debt and who benefitted from it were factors to be considered by the chancellor in distributing the property or in fashioning the monetary award.” Gamer, 16 Va.App. at 341, 429 S.E.2d at 623. Obviously, when the husband and wife misappropriated and spent funds during the *549 marriage that were not theirs and thereby created a debt that resulted in a lien on marital property, that debt was a marital debt created by the husband and the wife.
In Hayes v. Hayes, 21 Va.App. 515, 465 S.E.2d 590 (1996), we did not rule that the husband’s share of the marital estate could be reduced by the amount of child support payments the husband made during the marriage for the child of his prior marriage. Because the wife had made loans to the husband “for the benefit of the husband’s separate property,” id. at 515, 465 S.E.2d at 591, the trial judge found that the husband’s debt to the wife was separate debt. See id. at 519, 465 S.E.2d at 592. We upheld the trial judge’s finding that the debt was a separate debt, and we ruled that the trial judge erred in not determining pursuant to Code § 20-107.3(C) whether the husband was required to repay the borrowed funds. See id. We remanded the matter to the trial judge to determine whether to order the husband to pay the debt that arose from the loan. See id. In the case we decide today, no claim has been made that the husband borrowed funds from the wife or that the husband used the wife’s funds to improve his separate asset.
The decision in Orlandi v. Orlandi, 23 Va.App. 21, 473 S.E.2d 716 (1996), has no bearing on the issues that arise in this case. Orlandi concerns issues of child support between two divorced parties. No issue of equitable distribution or the interpretation of Code § 20-107.3 arose in that case.
The majority erroneously treats this issue as if the husband’s spousal support payments were a contribution made to enhance a nonmarital asset that is extant at the divorce. It was not. The husband’s payment of court-ordered spousal support was not a ruse to fund a separate asset. Many of the cases cited by the majority were not decided under Virginia law and contain instances in which a spouse spent marital assets to obtain or enhance a separate asset. In those instances, courts of other states have deemed that a diversion of marital funds to enhance a separate asset creates a marital interest in the enhanced property.
*550 The evidence in McGee v. McGee, 277 N.J.Super. 1, 648 A.2d 1128 (A.D.1994), proved that prior to their marriage, the husband purchased the wife’s house to save it from foreclosure and to pay debts the wife owed. See id. at 1129. He paid only $63,000 for the house even though it was valued at $150,000, exclusive of furnishings and the surrounding eleven acres of land. The value of the furnishings and eleven acres was unknown. See id. After the marriage, the husband “denuded the house of $134,000 of equity” by borrowing against the property, used the borrowed money to pay an obligation to his former spouse, and then conveyed the property to himself and the wife. Id. at 1131. The court ruled that the husband’s conduct effectively used the wife’s separate assets to pay the husband’s pre-existing obligations to his former wife. See id. at 1134. Because of the husband’s misuse of the wife’s house prior to and during the marriage, the court ruled that under New Jersey law, “[t]he case can be viewed from the vantage point of the shared enterprise of marriage beginning before the ceremonial act, or as one in which equitable remedies such as constructive trust, quasi contract or quantum meruit are invocable for equitable reasons.” Id. at 1134. That ruling is not dispositive of issues in this case.
In Dobbyn v. Dobbyn, 57 Md.App. 662, 471 A.2d 1068 (1984), the court was not concerned "with a party’s payment of support to another spouse during the marriage as a basis for making a monetary award. The issue in Dobbyn was whether the trial judge could consider the divorced husband’s new and future family obligations under Maryland’s statutory requirement to consider “ ‘[tjhe economic circumstances of each spouse at the time the award is to be made.’ ” Id. at 1077.
In Jensen v. Jensen, 877 S.W.2d 131 (Mo.Ct.App.1994), the court ruled that the husband’s payment of child support to a former spouse and to a former lover after the husband’s separation from his current wife was the husband’s separate debt. See id. at 135. Thus, when the husband liquidated marital assets during the separation to pay those debts, the *551 court set aside those funds as credits against the husband’s share of marital assets. See id.
In Fenske v. Fenske, 542 N.W.2d 98 (N.D.1996), the trial judge found “that the parties had paid off their individual and marital debts ‘by commingling everything they had.’ ” Id. at 102. Nothing in the Fenske opinion suggests that the trial judge gave either party a distribution based upon a party paying a pre-marital debt with marital funds.
North Carolina courts have ruled that “[a] reduction in the separate debt of a party to a marriage, caused by the expenditure of marital funds, is, in the absence of an agreement to repay the marital estate, neither an asset nor a debt of the marital estate.” Adams v. Adams, 115 N.C.App. 168, 443 S.E.2d 780, 781 (1994). Under that state’s law, any such reduction in the separate debt may only be considered as a factor if a justifiable reason exists. See id. (citing N.C. Gen.Stat. § 50-20(C)(12)).
In the case before us, the trial judge accepted the commissioner’s recommendation “that [the husband’s] contributions to the marriage should be reduced by spousal support he paid to his ex-wife.” I believe that the following reasoning, employed in Rosenfeld v. Rosenfeld, 597 So.2d 835 (Fla.Dist.Ct.App.1992), is more pertinent to the issues that arise in this case:
The wife in this case took the position at the time of the divorce that the trial court should revisit the parties’ expenditures throughout the marriage, and should retroactively decide that certain of the expenditures should not have been made.... [T]his amounted to a request for “a financial accounting of all of the marital years to determine which spouse was the more prudent investor and spender. We do not choose to start down such a path with this case.”
In the present case the wife complains because the husband paid court-ordered support to his previous wife, and made other payments required by the divorce decree. The wife’s position is entirely without merit.
*552 * * * * * *
Payments made to an ex-wife or children pursuant to a court order cannot be considered as waste or misuse of the marital assets of the successor marriage. Those obligations were incurred before the successor marriage, and obviously the subsequent spouse was well aware of them prior to the successor marriage. In any event, a party cannot refuse to make court ordered payments on the grounds that he or she has now remarried. Likewise, payment of expenses incident to a prior dissolution, such as attorneys’ fees, does not constitute waste or misuse of marital funds.
Id. at 837 (citation omitted) (footnotes omitted).
Using similar reasoning, the court in In re Marriage of Burgess, 568 N.W.2d 827 (Iowa App.1997), ruled that, in the division of marital property upon divorce, a wife was not entitled to a set-off or credit for the husband’s payment during the marriage of spousal and child support to his former wife. See id. at 828. The court concluded that it would be inequitable to consider those payments as a distribution factor because “the payment of the [support] obligation [by the husband] was a reasonable and expected aspect of the particular marriage.” Id.
The majority correctly notes that Bliss v. Bliss, 127 Idaho 170, 898 P.2d 1081 (1995), involved a division of property on divorce in a community property state. However, the principles applied to “community” property are not completely unrelated to issues that arise regarding “marital” property. In Bliss, the court held that the use of community funds to pay antenuptial debts, where such payment is unrelated to the enhancement of a separate asset, is not a basis upon which a party upon divorce may seek reimbursement to the community funds. See id. at 1084. That reasoning is valid when analogized to the issue in this case.
Simply put, Code § 20-107.3(E) does not authorize judges to enrich one of the parties based upon the mere finding that the other party, who was the sole source of income during the marriage, used portions of that income to pay debts that the *553 party incurred prior to the marriage. In particular, no evidence tended to prove that the husband’s payment of spousal support to his former spouse negatively contributed to his marriage to the wife. For these reasons, I would reverse the trial judge’s equitable distribution decision and remand for reconsideration.
(B)
Although the trial judge expressly noted that he was reducing the husband’s equitable distribution award for payments the husband made under a court order to support the husband’s spouse of a prior marriage, the record contains no indication that in making the monetary award the trial judge gave any consideration to the husband’s support, during the marriage, of his wife’s children from a prior marriage. The trial judge noted that “[tjhere is no mention by the commissioner of these matters [in the report].” Yet, the trial judge assumed the matter was considered because the commissioner “does say he has considered all the relevant factors which, of course, includes the catch all one in § 20-107.3(E).” The irony of the disparity between the treatment of this issue and the issue of the husband’s payment of spousal support to his former wife is palpable.
The evidence proved that when the wife’s former spouse stopped paying child support, the husband supported the three children from the wife’s prior marriage beginning when the oldest child was age fifteen. One of the wife’s children continued living in the house four years past the child’s majority. The husband’s salary was the family’s sole source of financial support.
On remand, I would direct the trial judge to expressly consider the husband’s payments and conduct which contributed to the well-being of the family. See Code § 20-107.3(E)(1).
(C)
The evidence proved that the husband paid $5,400 post-separation to reduce a marital debt that was associated with *554 an asset that had no value. I find no evidence in the record that the trial judge adjusted the award to consider that payment. Likewise, the evidence proved that the husband paid $2,282 for the preparation of the parties’ joint tax return and received no credit for that payment. I would also require the trial judge to reconsider on remand adjustments for those payments.