COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


CHARLES A. ATTILIIS

                                                MEMORANDUM OPINION[*] BY
v.       Record No. 1087-08-4                   JUDGE ROBERT J. HUMPHREYS
                                                       JUNE 9, 2009
PATRICIA L. ATTILIIS


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Paul F. Sheridan, Judge *Pro Tempore*

            Edward V. O'Connor, Jr. (Edward V. O'Connor, Jr., P.C., on
            briefs), for appellant.

            Ilona E. Grenadier (Arlene T. Starace; Jennifer Karrmann;
            Adrienne C. Wasserman; Grenadier, Anderson, Starace & Duffett,
            P.C., on brief), for appellee.


        Charles A. Attiliis ("husband") appeals the equitable distribution award made by the

circuit court pursuant to his divorce from Patricia L. Attiliis ("wife").  For the following reasons,

we affirm in part and reverse in part.

                                         ANALYSIS

        Husband makes four arguments on appeal regarding the circuit court's equitable

distribution of the couple's property:  (1) the circuit court erred by valuing and distributing the

couple's capital loss carry forward tax credit, (2) the circuit court erred by ordering husband to

maintain life insurance with wife as the beneficiary until he reaches 65 years of age, (3) the

circuit court erred by awarding money to wife for husband's waste, dissipation of assets, and

negative non-monetary contributions, and (4) the circuit court erred in finding that husband's

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

adultery was the primary cause of the dissolution of the couple's marriage. Wife raises an additional issue, claiming that the circuit court erred by awarding her less than half of the value of husband's accounting business.

All of the issues presented on appeal relate to the circuit court's equitable distribution of the couple's property. In fashioning an equitable distribution award, the court must consider the factors in Code § 20-107.3(E). "[A]s long as the trial court considers all the factors, it is at the court's discretion to determine what weight to give each factor when making the equitable distribution award." O'Loughlin v. O'Loughlin, 20 Va. App. 522, 526, 458 S.E.2d 323, 325 (1995). We will not reverse a court's equitable distribution unless it appears from the record that the court "has abused [its] discretion, that [it] has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying [its] resolution of the conflict in the equities." Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990). In light of those principles, we address each of the parties' arguments.

A. The Capital Loss Tax Credit

Husband first argues that the circuit court erred by awarding wife money in exchange for her interest in a tax credit held by the couple. Under federal tax law, an individual who suffers a capital loss may use that loss to offset capital gains of a like nature and/or up to $3,000 of ordinary income. See I.R.C. § 1211. Capital losses that cannot be fully used to offset income or capital gains may be carried over to be used to offset income and/or capital gains the next year. See id. Husband and wife sustained capital losses in 2005 and, at the time of the divorce, the couple had not fully used the tax credit that they received for those losses.

In its final order, the circuit court made the following ruling on the capital loss carry forward:

> (2) Capital Loss Carry Forward: The Court finds that the total of
> this asset is a long term loss carry forward of $75,000.00 and a

- 2 -

short term loss carry forward [of] $40,070.00, but [husband's] lack of disclosure with regard to the value of the use of this asset, he being a CPA and obviously with the knowledge of the value and use of this asset hindered the Court with regard to this asset. From the evidence deduced, the Court orders [husband] to pay to [wife] the sum of $50,000.00 as her interest in the item.

Husband argues that the circuit court's award of $50,000 was erroneous because the evidence was insufficient to prove the amount of the tax credit that the couple possessed.

At the hearing before the circuit court, wife introduced, without objection, an exhibit listing assets owned by the couple and the value of those assets. One of the assets listed was "Capital Loss shown on tax returns (loss of $75,000)." Wife's attorney presented the list to husband and asked him to compare the list of assets to his records. After reviewing the list, the following exchange took place:

[Husband]: Capital loss on tax return, you're calling that an asset?

[Attorney]: Yes, sir.

[Husband]: I'm not aware that that's an asset.

[Attorney]: I understand, but there was a capital loss at that time.

[Husband]: It wasn't $75,000.

At that point, the attorney stopped asking about the capital loss and began questioning husband about another asset.

Wife subsequently offered a draft of the couple's 2005 tax return into evidence. The tax return *did not indicate that the couple had a $75,000 capital loss tax credit*. Instead, the return indicated that the couple had a "Net short-term capital gain or (loss)" of "-40,070." The section of the 2005 tax return titled "Long-Term Capital Gains and Losses" was blank.

During wife's closing arguments, the attorneys clarified the amount of the capital loss tax credit:

| | |
|---|---|
| [Wife's Attorney]: | The next item is capital loss carry forward is an asset. I was under the impression it was $75,000. [Husband's attorney] corrected me. We went through the tax return yesterday, which it was $40,000 and now it's $37,070. |
| [Husband's Attorney]: | The total was $40,000. They claimed a $3,000 deduction in 2005. |
| [Wife's Attorney]: | And we are claiming half of that. They filed joint returns, and so they would be filing separate returns from here forward which brings me to the fact that I can't tell you if [husband] used it or not, because it's not been updated. |
| | I don't have his '06 tax return. He didn't provide it. We did provide Mrs. Attiliis.' So, I don't know if he used it in '06 or not, but we would request that he provide for it if he did. |

In light of wife's concession regarding the amount of capital loss carry forward, and the couple's 2005 tax return, it is apparent that the remaining amount of the tax credit was, at most, $37,070, not $75,000. The court found that the couple had a $75,000 long-term capital loss carry forward *and* a $40,070 short-term capital loss carry forward. The evidence does not support that finding.[1] Because that factual finding was essential to the court's distribution of that asset, we reverse and remand that issue for consideration in light of the proper facts.

## B. Life Insurance

In its final order, the circuit court ordered husband to continue to carry four term life insurance policies, until he reaches the age of 65, with wife as the sole beneficiary. Husband

---

[1] At oral argument, wife conceded that the evidence does not support a $75,000 long-term capital loss carry forward.

- 4 -

argues that the circuit court had no authority to order him to maintain life insurance as part of the equitable distribution. We agree.

Jurisdiction in divorce suits is purely statutory. Lapidus v. Lapidus, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984). "When the General Assembly sets out to confer . . . jurisdiction on divorce courts, it accomplishes the purpose using clear, detailed language." Johnson v. Johnson, 224 Va. 641, 645, 299 S.E.2d 351, 354 (1983). In Code § 20-107.3(G)(2), the General Assembly specifically addressed the circumstances under which a circuit court can require a person to designate a former spouse as the beneficiary of death benefits. Code § 20-107.3(G)(2) states:

> the court may order a party to designate a spouse or former spouse as irrevocable beneficiary during the lifetime of the beneficiary of all or a portion of any survivor benefit or annuity plan of whatsoever nature, *but not to include a life insurance policy*. The court, in its discretion, shall determine as between the parties, who shall bear the costs of maintaining such plan.

(Emphasis added). "Nothing in the divorce statutes" empowers circuit courts to compel a spouse "to contract for life insurance" with the former spouse as the beneficiary.[2] Lapidus, 226 Va. at 579, 311 S.E.2d at 788. Simply put, "a trial court cannot order that a person obtain life insurance on himself for the benefit of a former spouse." Lewis v. Lewis, 53 Va. App. 528, 542, 673

---

[2] The General Assembly has specifically established certain circumstances in divorce cases where a party continues to maintain a life insurance policy, but also has the right to designate the beneficiary. See Code § 20-108.1(D) ("In any proceeding under this title, Title 16.1 or Title 63.2 on the issue of determining child support, the court shall have the authority to order a party to (i) maintain any existing life insurance policy on the life of either party provided the party so ordered has the right to designate a beneficiary and (ii) designate a child or children of the parties as the beneficiary of all or a portion of such life insurance for so long as the party so ordered has a statutory obligation to pay child support for the child or children."); Code § 20-111.1 ("Upon the entry of a decree of . . . divorce from the bond of matrimony on and after July 1, 1993, any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked. . . . This section shall not apply (i) to the extent a decree of annulment or divorce from the bond of matrimony, or a written agreement of the parties provides for a contrary result as to specific death benefits, or (ii) to any trust or any death benefit payable to or under any trust."). However, this case does not implicate Code §§ 20-108.1(D) or 20-111.1.

S.E.2d 888, 895 (2009). Because the circuit court lacked the authority to order husband to maintain life insurance with wife as the beneficiary, that provision of the divorce decree is void.

### C. Waste, Dissipation, and Negative Non-Monetary Contributions

Husband argues that four of the monetary awards made by the circuit court, when viewed together, are erroneous. Specifically, he claims that the circuit court's two awards for waste, as well as the court's award of money for husband's dissipation of assets and negative non-monetary contributions, were duplicitous and punitive. In order to address husband's argument, we must examine the validity of each of the four challenged awards.

### 1. Waste

The separation agreement, signed by the parties on February 10, 2005, required, *inter alia*, that "Neither party shall incur a major expense without the prior consent of the other party" and that "both parties agree not to sell, give away, transfer, dissipate or otherwise dispose of or encumber any assets . . . except as provided herein." Following the separation agreement, both parties spent money from the BB&T account on personal expenses. Husband closed the account prior to the hearing on equitable distribution and wrote checks to wife for what he believed to be her half of the money in the account. Wife argued at the hearing that husband did not properly account for the personal expenditures made by the couple prior to closing the account and sending her a check.

In its final order, the circuit court agreed with wife, stating:

> From the evidence adduced, [husband] unilaterally and in contravention of a *pendente lite* order of the Court, utilized some of these monies for activities which the Court finds as waste, to include gambling debt. The Court intended that these accounts be equally divided, and as such, finds that they were not. In this regard, [husband] shall pay to [wife] the sum of $11,165.00 which

- 6 -

she is owed from the HD Vest account,[3] and the sum of $15,876.00 which she is owed from [the BB&T account].

Husband argues that the circuit court improperly calculated the amount of money that husband owed wife from the couple's money market account at BB&T ("the BB&T account"). We agree.

After executing the separation agreement, both parties continued to use the BB&T account for personal expenses. The couple kept track of the expenditures from the account with a spreadsheet that labeled each transaction as a joint expense, husband's expense, or wife's expense. When husband closed the account, he distributed the funds based on that spreadsheet, debiting each party for the personal expenditures made from the account. However, two of those expenditures, totaling $13,176.36 had been improperly labeled as wife's expenses when, in fact, they were joint expenses.[4] Husband failed to correct those mistakes prior to distributing the money from the account. The result of that mistake was that $13,176.36 was taken entirely from wife's share of the account, when the expense should have been shared equally.

In addition to their personal expenses, the couple also paid $13,500 out of the BB&T account for dental work for one of their sons. The *pendente lite* order required wife to contribute 30% of the cost of the medical expenses and husband to contribute 70% of the cost of the medical expenses. Wife testified that husband apportioned the cost of the dental work as a joint

---

[3] Husband also argues that the circuit court miscalculated the award for the HD Vest account. However, husband did not object to the final order on that ground. Rule 5A:18 requires that objections must be "stated together with the grounds therefor." It is insufficient to simply object generally to a circuit court's final order. See Lee v. Lee, 12 Va. App. 512, 404 S.E.2d 736 (1991). Therefore, we must assume that the court's award of $11,165 was proper to equally divide the HD Vest account.

[4] The expenses were $10,000 in legal fees that the court had ordered to be paid out of marital funds and $3,176.36 in joint credit card debt that wife paid off.

expense, resulting in a 50/50 split of the cost. The result, wife alleged, was that she was overcharged by $2,700 – the difference between a 50% share and a 30% share of $13,500.

In its final order the circuit court awarded wife "$15,876.00 which she is owed from [the BB&T account]." Apparently, the circuit court arrived at that number by adding the $2,700 from the dental work to the $13,176.36 in mislabeled personal expenses. However, wife was not entitled to the entire $13,176.36. Those expenses were attributed to her when they should have been attributed to *both* parties. Thus, wife was only "overcharged" $6,566.18, half of the $13,176.36. In order to equally divide the BB&T account and account for husband's waste, wife was only entitled to $9,288.18, which is half of $13,176.36 plus the $2,700 she was owed for the dental expenses.

Therefore, the circuit court's finding that wife was owed $15,876 from the BB&T account is not supported by the evidence. Because "the evidence fails to support the findings of fact underlying" the circuit court's award, we must reverse on that ground and remand for recalculation of that award. Robinette, 10 Va. App. at 486, 393 S.E.2d at 633.

## 2. Dissipation of Assets

In addition to the circuit court's award for waste, the court also awarded wife $50,000 "[i]n consideration of [husband's] dissipation of assets during the marriage." Husband argues that award is duplicative of the awards for waste and that it is not supported by the evidence. Wife argues that the award for dissipation of assets is distinct from the award for waste. She claims that the award for waste was to compensate wife for husband's spending *after* the breakdown of the marriage, whereas the award for dissipation of the assets was to compensate wife for husband's use of marital funds *throughout* the marriage. In its final order, the circuit court did not specifically state whether the $50,000 award was to compensate wife for husband's expenditures prior to the separation agreement. However, in light of our jurisprudence, it is clear

that the $50,000 award was intended to compensate for expenditures made after the breakdown of the marriage. As such, it is duplicitous of the award for waste. Moreover, there is no factual basis for an additional award of $50,000 for waste.

By giving wife a monetary award in consideration of husband's "dissipation of assets," the circuit court was essentially giving wife an additional award for waste. We have previously held that "[d]issipation occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage *at a time when the marriage is undergoing an irreconcilable breakdown*.'" Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990) (quoting Hellwig v. Hellwig, 426 N.E.2d 1087 (Ill. Ct. App. 1981)) (emphasis added). Similarly, waste is defined as the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988). "Dissipation of assets" is essentially waste. See Smith v. Smith, 18 Va. App. 427, 430-31, 444 S.E.2d 269, 272 (1994) (using "dissipation of assets" and "waste" interchangeably). By definition, "dissipation" applies "only to funds spent contemporaneously with the marital breakdown." Id. at 431, 444 S.E.2d at 272.

In Smith, we explained that dissipation of assets is not something that occurs over the course of a marriage. Specifically, we held that a husband's use of funds to pursue a paramour over the course of 15 years during the marriage was not a dissipation of assets. We explained that the concept of dissipation of assets does not apply to expenditures "which were not specifically for the purpose of depleting the marital estate and where there was no evidence that there was an irreconcilable breakdown of the marriage." Id. Thus, we concluded "the trial court did not err by finding that wife failed to show that husband's pre-separation expenditures constituted dissipation of marital assets." Id.

- 9 -

Thus, by making a $50,000 award "[i]n consideration of [husband's] dissipation of assets during the marriage," the court indicated that it based the award on expenditures made by husband after the irreconcilable breakdown of the marriage. There is no evidence supporting such an award. The parties entered into the separation agreement in February 2005, and in March 2005, wife formed the intent to terminate the marriage. The only evidence in the record of "waste" or "dissipation of assets" by husband after that time was the money that he spent from the BB&T and HD Vest accounts. There is no evidence of any additional waste by husband after February 2005. Once the circuit court had given wife a monetary award to account for husband's waste of the BB&T and HD Vest accounts, there was no additional basis for giving wife an award in consideration of husband's dissipation of assets. Because there is no evidence to support the circuit court's $50,000 award for dissipation of assets, we reverse that award.

### 3. Negative Non-monetary Contributions

Lastly, husband challenges the award of $65,000 to wife "[i]n consideration of the effect of [husband's] negative non-monetary contributions." He argues that award is duplicitous of the awards for waste and dissipation of assets. He is incorrect.

Code § 20-107.3(E)(1) requires circuit courts to consider the "contributions, monetary and nonmonetary, of each party to the well-being of the family" when fashioning an equitable distribution award. Unlike waste or dissipation of assets, "[c]onsideration of nonmonetary contributions to the well being of the family under Code § 20-107.3(E)(1) *requires no showing of an adverse economic impact*." Watts v. Watts, 40 Va. App. 685, 699, 581 S.E.2d 224, 231 (2003) (emphasis added). Rather, "the 'wellbeing' of the family relates to the effect on the family's emotional welfare and condition." Id. By definition, *non-monetary* contributions do not involve money. Thus, an award for negative non-monetary contributions is separate and distinct from an award for waste or dissipation of assets.

Because the award, as we interpret it, is not duplicitous of the awards for waste and dissipation of assets, it is valid, so long as the record supports it. Robinette, 10 Va. App. at 486, 393 S.E.2d at 633. The record is replete with evidence of husband's negative non-monetary contributions. Specifically, wife testified regarding the effect husband's drinking, adultery, gambling, and verbal abuse had on the couple's marriage and family. Because there is evidence supporting the circuit court's award, we will not disturb it on appeal.

### D. Primary Cause of the Dissolution of the Marriage

Husband next argues that the circuit court erred by holding that husband's adultery was the primary cause of the dissolution of their marriage. However, husband failed to comply with Rule 5A:20, and we hold that his argument is waived.

In its findings of fact relating to equitable distribution, the circuit court specifically addressed the "circumstances and factors that contributed to the dissolution of the marriage." Code § 20-107.3(E)(5). In regard to that factor, the court found that "the aforesaid conduct of the Husband along with proven adultery, was the primary cause of the dissolution of the marriage. By agreement of the Wife, however, the actual grounds will be separation in excess of one year, which grounds were also proven to the satisfaction of the Court."

In the argument section of his opening brief, husband quotes that language from the final order and then, over the next nine pages, argues that the circuit court erred in finding that husband's adultery was the primary cause of the dissolution of the marriage. Husband did not, however, cite a single case or statute in support of his argument.

Wife responded in her brief under the apparent assumption that husband was contending that the circuit court erred regarding the grounds upon which it granted the divorce. Wife argued that husband's appeal in that regard was moot because the circuit court awarded wife a divorce

on the basis of the couple's living separate and apart for more than one year, *not* husband's adultery.

Husband then responded in his reply brief that he was not claiming that the circuit court erred regarding the grounds upon which it granted the divorce. Instead, he claimed that his objection was to the circuit court's factual finding that the adultery was the primary cause of the divorce. He claimed that the equitable distribution was improper because the circuit court relied on that erroneous finding of fact. In support of his clarified argument, husband cited to two cases as well as a statutory provision.

However, by failing to cite any legal authority in his opening brief husband left wife to guess as to what specific legal arguments husband was raising on appeal.[5] "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008). Husband failed to sufficiently adhere to the requirements of Rule 5A:20(e) by failing to include any legal authority in his opening brief on this question presented. In doing so, he deprived wife of her opportunity to meaningfully respond to his legal arguments. As such, we hold that his failure to cite any legal authority in his opening brief regarding this question presented is a significant violation of Rule 5A:20(e) and we treat that question presented as waived.

---

[5] Husband's question presented offered little assistance to wife as well. It simply stated: "Did the trial court err in finding that Charles' adultery was the primary cause of the dissolution of the marriage?"

- 12 -

E. Distribution of Attiliis and Associates, Ltd.

In addition to husband's questions presented, wife raises an issue of cross-error on appeal. She claims that the circuit court erred in its division of the couple's accounting business, Attiliis and Associates, Ltd.

At the hearing, the parties stipulated that the value of Attiliis and Associates, Ltd., was $308,200. Wife asked the court for a cash award of one half of that amount as part of equitable distribution. In its final order, the circuit court accepted the parties' stipulation regarding the value of the business and ordered husband to pay to wife "$105,000 as and for her marital interest." Wife argues that the circuit court "did not give sufficient weight to the factors under Code § 20-107.3 in determining the amount of [wife's] monetary award for her interest in [Attiliis and Associates]." That, however, is not a proper basis for reversal of a circuit court's equitable distribution.

As stated above, "as long as the trial court considers all the factors, it is at the court's discretion to determine what weight to give each factor when making the equitable distribution award." O'Loughlin, 20 Va. App. at 526, 458 S.E.2d at 325. There is no statutory presumption in favor of equal distribution. Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986). In its final order, the circuit court stated that it considered the evidence presented by the parties and the Code § 20-107.3 factors. Having done so, it was within the court's discretion to award husband a larger share of the accounting business.

CONCLUSION

For the foregoing reasons, we hold as follows. We reverse the circuit court's award of $75,000 to wife for her interest in the capital loss tax credit. We reverse the circuit court's order that husband maintain life insurance with wife as the beneficiary until he reaches 65. We reverse the circuit court's award of $15,876 related to the distribution of the BB&T account. We affirm

the circuit court's award of $11,165 from the HD Vest account. We reverse the circuit court's award of $50,000 for dissipation of assets. We affirm the circuit court's award of $65,000 for husband's negative non-monetary contributions. We affirm the circuit court's finding that husband's adultery was the primary cause of the dissolution of the marriage. We affirm the circuit court's distribution of Attiliis and Associates, Ltd. We remand for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>